J-E03005-15

2016 PA Super 5

| | |
|---|---|
| RICHARD VAUTAR, AS ATTORNEY-IN-FACT FOR BERTHA VAUTAR<br><br>      Appellee<br><br>      v.<br><br>FIRST NATIONAL BANK OF PENNSYLVANIA<br><br><br>      v.<br><br>THE ESTATE OF FRANCES SAKMAR, AND MICHAEL SAKMAR AND EDWARD SAKMAR, CO-EXECUTORS OF THE ESTATE OF FRANCES SAKMAR<br><br><br>      v.<br><br>MICHAEL SAKMAR, EDWARD SAKMAR, AND EILEEN ATWOOD, INDIVIDUALLY<br><br>      Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 161 WDA 2014 |

Appeal from the Judgment Entered December 30, 2013
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2009-01615

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
          SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J., and JENKINS, J.

OPINION BY LAZARUS, J.:          **FILED JANUARY 06, 2016**

Michael Sakmar, Edward Sakmar and Eileen Atwood ("Appellants") appeal from the amended/supplemental verdict of the Court of Common Pleas of Cambria County, holding them liable to First National Bank of Pennsylvania ("FNB") in the amount of $69,188.80, plus interest, under a theory of unjust enrichment. Upon careful review, we affirm.

Appellants are the children of Frances Sakmar ("Frances"). Frances had two sisters, Jean Sojak ("Sojak") and Bertha Vautar ("Vautar"). On January 12, 2005, Sojak renewed four certificates of deposit at FNB and titled them as follows: "Jean Sojak in trust for Frances Sakmar/Bertha Vautar." At some point thereafter, a misunderstanding arose regarding the beneficiary designation on the CDs, leading Frances to believe that Sojak had again retitled the CDs in trust for Frances alone.[1]

Following Sojak's death, Frances attempted to redeem the CDs. However, as Frances was not in possession of the original CDs, FNB required Frances to sign four "Indemnity Bonds for Lost Instruments" ("Indemnity Bonds"), pursuant to which Frances represented that she was entitled to the proceeds of each CD, that the CDs had been lost, mislaid, stolen or destroyed, and that she agreed to hold FNB harmless against any and all claims against the CDs. Once Frances executed the Indemnity Bonds, FNB released the entire proceeds of all four CDs to her.

---

[1] Correspondence from FNB contributed to the confusion over the life of the CDs by addressing related correspondence to Sojak as "Jean Sojak in trust for Frances Sakmar." This apparently resulted from a lack of space in the section where title was designated in certain of FNB's computer forms. Vauter's name was, however, included in a "Miscellaneous Addenda" section, which appeared in a subsequent screen of FNB's account information computer program. Moreover, following Sojak's death, FNB compounded the confusion by furnishing her estate's attorneys with a letter stating that Frances was the sole beneficiary of all four accounts.

Vautar subsequently demanded payment from FNB of her half of the proceeds of the CDs ("Disputed Funds"), ultimately filing a civil action ("Vautar Action") to recover the funds. FNB demanded reimbursement from Frances, who declined to repay the Disputed Funds. Frances placed the funds in an Oppenheimer Funds account and, after her death, the Disputed Funds went, in equal shares, to the three Appellants pursuant to the Oppenheimer account's beneficiary designation. Michael Sakmar and Edward Sakmar placed their shares in Allianz investment accounts, while Eileen Atwood used her portion to make payments on a home equity line of credit and educational loans.

FNB filed a third-party complaint to join Frances to the Vautar Action. Frances died thereafter and her estate[2] became a party to the action. On August 16, 2010, FNB filed an amended third-party complaint to join Appellants to the Vautar Action, due to their receipt of the Disputed Funds from their mother's Oppenheimer account. The causes of action pled by FNB in its third-party complaints included declaratory relief, breach of contract (Frances), intentional misrepresentation (Frances and Appellants), negligent misrepresentation (Frances and Appellants), and unjust enrichment/constructive trust (Frances and Appellants).

After a nonjury trial, the court entered a verdict finding

---

[2] Michael Sakmar and Edward Sakmar are the co-executors of Frances' will.

for FNB and against the Estate of Frances Sakmar and Michael Sakmar and Edward Sakmar, co-executors of the Estate of Frances Sakmar, in the amount of $69,188.80 plus interest from June 26, 2007.

Trial Court Verdict, 9/5/13.

FNB filed a motion for post-trial relief, asserting that, because the court determined that Frances never had legal title to the Disputed Funds, and because Frances' beneficiary designation transferred the Disputed Funds directly to the Appellants upon her death, the court should have imposed a constructive trust on the funds held by the Appellants. On December 16, 2013, the trial court entered an "Amended/Supplemental Verdict" finding against both Frances' estate and the Appellants and concluding that Appellants were unjustly enriched by their receipt of the Disputed Funds. The court further indicated that it would "consider the imposition of the constructive trust requested by FNB upon Praecipe by FNB should the requested trust become necessary for collection of this Verdict." Amended/Supplemental Verdict, 12/16/13, at 2.

Appellants filed a timely notice of appeal on January 15, 2014, followed by a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. FNB filed a motion to quash the appeal due to Appellants' failure to file post-trial motions in response to the trial court's amended/supplemental verdict. By memorandum filed February 27, 2015, this Court granted FNB's motion and quashed the appeal. *See Vautar v. First Nat'l Bank of Pa.*, No. 161 WDA 2014 (Pa. Super. filed Feb. 27, 2015) (unpublished memorandum). On March 14, 2015, Appellants filed an

application for reargument, which was granted by order filed on May 7, 2015. Appellants raise the following issues for our review:

> 1. May a party recover on an unjust enrichment theory when adequate legal remedies are sought and, in fact, pursued and obtained at trial?
>
> 2. May non-parties to a contract who benefit from the breach of the contract, but who commit no malfeasance, be held liable to a contracting party on an unjust enrichment theory?

Substitute Brief of Appellants, at 2.

Prior to addressing the claims raised by the Appellants, we must determine if they have preserved their claims on appeal. Pursuant to Pa.R.C.P. 227.1(c):

> (c) Post-trial motions shall be filed within ten days after
>
> (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
>
> (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

*Id.* If an issue has not been raised in a post-trial motion, it is waived for appeal purposes. *Chalkey v. Roush*, 757 A.2d 972, 975 (Pa. Super. 2000).

FNB asserts that Appellants have waived all issues due to their failure to file post-trial motions following the trial court's entry of the amended/supplemental verdict. FNB argues that the original verdict was incomplete because it failed to "dispose of all claims for relief" pursuant to Pa.R.C.P. 1038(b). Specifically, the original verdict only addressed FNB's claim against Frances' estate and was silent as to the equitable claims against the Appellants. FNB also cites to Pa.R.A.P. 341, which provides that

a final order is any order that "disposes of all claims and of all parties." FNB asserts that there was no "final order" until the entry of the amended/supplemental verdict, because all claims of all parties were not disposed of that time. As such, post-trial motions were necessary to preserve Appellants' issues on appeal.

Appellants assert that, pursuant to the decision of our Supreme Court in ***Newman Dev. Group of Pottstown, LLC v. Genuardi's Family Mkts., Inc.***, 52 A.3d 1233 (Pa. 2012), certain post-trial proceedings do not require a party to file post-trial motions because the proceedings do not amount to a "trial"[3] such that Rule 227.1 applies. For the reasons that follow, we agree with Appellants that, due to the unique circumstances of this case, they were not obligated to file post-trial motions to the amended/supplemental verdict in order to preserve their appellate claims.

The requirement that parties preserve their claims through the filing of post-trial motions is grounded in the salutary purpose of providing the trial court with an opportunity to correct any errors that the parties bring to its

_____

[3] The note to Rule 227.1(c) provides as follows:

> A motion for post-trial relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to Rule 1038. A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery *or other proceedings which do not constitute a trial*.

Pa.R.C.P. 227.1(c), note (emphasis added).

attention, thereby, ideally, reducing the number of appeals as well as the burdens and costs associated therewith. *See id.* at 1248. However, our Supreme Court has noted that

> [t]o warrant the heavy consequence of waiver, in a rules schemata designed to "secure the just, speedy and inexpensive determination" of disputes, the applicability of the Rule should be apparent upon its face or, failing that, in clear decisional law construing the Rule.

*Id.* at 1247. A key factor cited by the Court is whether the rule provides "sufficient predictability to practicing attorneys regarding when post-trial motions must be filed, such that a colorable argument can be made that more could be required of litigants . . . than the plain language of the Rule demands." *Id.* at 1249.

The Supreme Court's decision in *Newman*, *supra*, provides us guidance in this matter. There, this Court remanded the case to the trial court for a recalculation of damages. On remand, the parties filed memoranda of law and presented oral argument, but the court received no additional evidence. Thereafter, the trial court recalculated damages and entered a molded judgment. On appeal from the molded judgment, this Court quashed, finding that the appellants had waived all issues by failing to file new post-trial motions.

The Supreme Court granted review to consider the question of whether quashal was appropriate where the appeal was from a recalculation of damages in accordance with a remand order, where no additional evidence was received. The Court concluded that the remand proceedings in

that case, where the court merely reached a new damage calculation based on facts already in the record, did not constitute a "trial" mandating compliance with Rule 227.1. The Court focused on the fairness of finding waiver where the rule is unclear:

> Obviously, if an appellate court remands for a new trial, the civil trial rules apply again, and in full force. But, the circumstance here – not an uncommon scenario – involves a gray area, where there are to be further proceedings below, but the proceedings do not amount to a trial.

*Id.* at 1246-47.

> When a court finds waiver in a novel situation in which reasonable counsel would not have known of the requirement that gave rise to the waiver, the salutary purposes of waiver are not served at all. In such a circumstance, there is no benefit to the judicial process, only a trap that denies merits review to those who, despite diligence, make a choice an appellate court later decides was wrong.

*Id.* at 1244.

Here, FNB filed post-trial motions to the trial court's original verdict, asserting that judgment should also have been entered against the Appellants. Although the parties submitted briefs and the court heard oral argument, no new testimony was taken or evidence received. The proceedings clearly did not "amount to a trial." Rather, the trial court issued its amended/supplemental verdict based solely on its reevaluation of the existing record, augmented only by the parties' legal arguments. Notably, the issues Appellants raise on appeal are the same ones argued on post-trial motions, i.e., whether Appellants are liable to FNB on a theory of unjust enrichment. Thus, requiring Appellants to initiate a second round of post-

trial motions, raising the identical issue the trial court had just decided in favor of FNB, would have been fruitless, a waste of judicial resources, and would not have furthered the underlying purpose of Rule 227.1.

Finally, we note that FNB's argument regarding the lack of finality of the original verdict is misplaced. As this Court has previously stated,

> Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party wishes to raise on appeal. In other words, *a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions*.

***Chalkey***, 757 A.2d at 496 (emphasis added). Accordingly, even if the trial court had explicitly found that Appellants were not liable to FNB in the original verdict, the order would not have been considered a final appealable order until the court had disposed of post-trial motions.

For the foregoing reasons, we conclude that Appellants were not required to file post-trial motions to the trial court's amended/supplemental verdict in order to preserve their claims on appeal. Accordingly, we will consider the merits of their appeal.

We begin by noting that:

> [A]ppellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.

*First Capital Life Insurance Company v. Schneider, Inc.*, 608 A.2d 1082 (Pa. Super. 1992) (citations omitted).

Appellants assert that the trial court erred in holding them liable under the equitable theory of unjust enrichment. Appellants claim that, under Pennsylvania law, equitable relief is unavailable where an adequate legal remedy exists. As FNB sought and obtained adequate legal remedies against Frances' estate, Appellants assert that the court erred by also granting equitable relief. Appellants also argue that they cannot be held liable under a theory of unjust enrichment because they did not engage in any misconduct or mislead FNB to enter into the indemnity agreements with Frances. For the following reasons, we disagree.

> It is well established that "a court of equity has jurisdiction and, in furtherance of justice, will afford relief if the statutory or legal remedy is inadequate, or if equitable relief is necessary to prevent irreparable harm." *Martino v. Transport Workers' Union of Philadelphia*, 505 Pa. 391, 396, 480 A.2d 242, 244-245 (1984). *See also*: *Wood v. Goldvarg*, 365 Pa. 92, 95, 74 A.2d 100, 101-102 (1950) ("in order to oust equity jurisdiction, there must be a legal remedy that is adequate and complete."); *Chartiers Valley School District v. Virginia Mansions Apartments*, 340 Pa.Super. 285, 294, 489 A.2d 1381, 1386 (1985); *South Coventry Township v. Philadelphia Electric Company*, 94 Pa.Cmwlth. 289, 299, 504 A.2d 368, 373 (1986). Moreover, "a court of equity has the power to afford relief despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." *Hill v. Nationwide Insurance Co.*, 391 Pa.Super. 184, 188, 570 A.2d 574, 576 (1990), quoting *Peitzman v. Seidman*, 285 Pa.Super. 228, 234 n. 4, 427 A.2d 196, 199 n. 4 (1981). The *Hill* court discussed the concept of an adequate and complete remedy at law in greater detail[:]

> To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. An existing remedy at law to induce equity to decline the exercise of its jurisdiction in favor of a suitor must be an adequate and complete one. And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and complete remedy cannot be afforded at law, equity extends it jurisdiction in furtherance of justice.
>
> *Id.*, quoting *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 329, 125 A.2d 755, 766 (1956), cert. denied sub. nom. *Bowman v. Pennsylvania State Chamber of Commerce*, 352 U.S. 1024, 77 S.Ct. 589, 1 L.Ed.2d 596 (1957).

*First Capital*, 608 A.2d at 1084.

> Moreover,
>
> [e]quitable relief "depends not so much on the want of a common-law remedy, as upon its inadequacy and its exercise is a matter which often rests within the discretion of the court; in other words the court may take upon itself to say whether the common-law remedy is, under all the circumstances and in view of the conduct of the parties, sufficient for the purpose of complete justice[.]" *Cohen v. Pelagatti*, 342 Pa.Super. 626, 634-635, 493 A.2d 767, 771 (1985), quoting *Penn. Iron Co., Ltd. v. City of Lancaster*, 25 Pa.Super. 478, 483 (1904).

*First Capital*, 608 A.2d at 1086.

In the instant matter, FNB was originally awarded judgment against Frances' estate alone. However, because Frances' estate contained approximately only $30,000, the remedy awarded by the court was an incomplete one, given that the court determined that FNB was entitled to the sum of $69,188.80. Because, under the particular circumstances of this case, a full and complete remedy at law was not available to FNB, the trial

court properly invoked equity to provide a just result. **See id.** at 1084 ("where a full, perfect and complete remedy cannot be afforded at law, equity extends it jurisdiction in furtherance of justice.").

The trial court also acted in accordance with the law in concluding that Appellants were liable under the theory of unjust enrichment due to their receipt of the Disputed Funds. Contrary to Appellants' assertion, FNB was not required to demonstrate wrongdoing on the part of the Appellants to prove unjust enrichment.

> To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought *either wrongfully secured or passively received a benefit* that it would be unconscionable for her to retain. In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied. *A showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment*. Rather, the focus is on the resultant unjust enrichment, not on the party's intention.

**Torchia ex rel. Torchia v. Torchia**, 499 A.2d 581, 582-83 (Pa. Super. 1985) (internal citations and punctuation omitted) (emphasis added).[4]

---

[4] The facts of **Torchia** are strikingly similar to those of the instant matter. In that case, father agreed as part of a divorce settlement to maintain his three children as beneficiaries of his life insurance policies. Following his remarriage, father changed the beneficiary designations, naming his new wife as primary beneficiary. Following father's death, his widow received the proceeds of the policies and the children's mother commenced an action in equity against her, asserting that the widow had been unjustly enriched. This Court affirmed the trial court's finding in favor of the children, quoting with approval the following language from a decision of the Court of Appeals of New York:

*(Footnote Continued Next Page)*

Thus, FNB was not required to demonstrate that Appellants engaged in misleading or wrongful conduct in receiving and retaining the Disputed Funds. Rather, it merely needed to show that retention of the money by Appellants would result in an injustice. Given Frances' breach of the indemnity agreements, FNB's right to the Disputed Funds was superior to that of the Appellants, who merely received a gratuitous benefit upon Frances' death. As such, the trial court did not err in entering judgment against them.

Order affirmed.

President Judge Emeritus Bender, Judge Bowes, Judge Panella, Judge Shogan, Judge Ott, Judge Stabile, Judge Jenkins, join the majority. President Judge Gantman concurs in the result.

_____

*(Footnote Continued)* ————————

Defendant, having furnished no consideration for the receipt of the proceeds of the life insurance policy, has received a gratuitous benefit and would be unjustly enriched in the eyes of the law were she to retain those proceeds against the claims of the children for breach by their father of his agreement to continue them as beneficiaries of the policy. That the children might also have a breach of contract claim against their father's estate is of no moment so far as the liability of defendant to the children is concerned[.]

*Torchia*, 499 A.2d at 583-84, quoting *Markwica v. Davis*, 473 N.E.2d 750, 752 (N.Y. 1984).

J-E03005-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/6/2016