J-A12011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHESTNUT RIDGE GROUP, L.P. D/B/A CHESTNUT RIDGE BEVERAGE CO. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PROGRESSIVE PLASTICS, INC. | |
| Appellant | No. 621 WDA 2016 |

Appeal from the Judgment Entered May 25, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 09-0011570

| | |
|---|---|
| CHESTNUT RIDGE GROUP, L.P. D/B/A CHESTNUT RIDGE BEVERAGE CO. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PROGRESSIVE PLASTICS, INC. | |
| | No. 669 WDA 2016 |

Appeal from the Judgment Entered May 25, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 09-11570

BEFORE: SOLANO, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED DECEMBER 05, 2017**

Appellant Progressive Plastics, Inc. appeals from the judgment for $27,000 entered against Appellee Chestnut Ridge Group, L.P., doing business as Chestnut Ridge Beverage Co., on Progressive's counterclaim for

_____

[*] Retired Senior Judge assigned to the Superior Court.

breach of contract. Chestnut Ridge cross-appeals from the judgment entered against it on its claim against Progressive and on Progressive's counterclaim against Chestnut Ridge. We affirm.

On February 28, 2008, Chestnut Ridge held an auction to sell industrial equipment located at its plastic bottle-making plant in Latrobe, Westmoreland County. The auctioneer was Harry Davis & Company ("Davis"). The terms of sale governing the auction included nineteen numbered paragraphs, including the following:

> 7. PURCHASER'S RISK - All purchases made at this sale are at the purchaser's risk as soon as they are announced sold by the Auctioneer; the Auctioneer and principal not being responsible if all or any part of such purchases are lost, stolen, damaged or destroyed from any cause whatsoever.
>
> . . .
>
> 9. AUCTIONEER'S LIABILITY: Auctioneer shall not, in an event, be liable for non-delivery or for any other matter or thing, to any purchaser of any lot, other than for the return to the purchaser of the deposit or sum paid on said lot, should the purchaser be entitled thereto. The auctioneer shall not be liable, in any greater amount than that paid by the purchaser and, in all instances, the highest bid shall be accepted by both the buyer and seller as the value against which all claims for loss or damage shall lie.
>
> . . .
>
> 11. RISK TO PERSON AND PROPERTY – Persons' attending during exhibition, sale or removal of goods assume all risks of damage of or loss to person and property and specifically release the auctioneer from liability therefore. Neither the auctioneer nor his principal shall be liable by reason of any defect in or condition of the premises on which the sale is held.

Ex. A to Amended Compl., 11/20/09.[1]

Progressive, located in northeastern Ohio, placed the highest bid on two aluminum silos and paid Davis $15,070 for them. Progressive also purchased a third silo through an intermediary at the auction for $9,000, spending a total of $24,070 for the three silos.[2] The silos were to be used to store resin, an ingredient in the process of making plastic bottles. Progressive planned to retrieve the silos by the end of May 2008, when the warmer weather would allow Progressive to pour the concrete pads necessary for installation of the silos.

In late March 2008, Davis advised Progressive that it would not be able to deliver the silos. Chestnut Ridge had discovered that removal of the silos would be unreasonably costly and would risk damage to its Latrobe facility. Chestnut Ridge attempted to return the payment for the silos to Progressive plus an additional $3,000. Progressive refused repayment. Progressive did not purchase or lease any replacement silos in 2008, 2009, or 2010.

_____

[1] The auction catalogue contained an abbreviated version of the terms of sale, including the above Paragraph 9 (relabeled as Paragraph 3). It also stated: "NOTICE: All bidders and other persons attending this sale agree that they have read and have full knowledge of the following terms," and "Other terms of sale are posted at the auction site and are available upon request." Ex. B. to Amended Compl., 11/20/09.

[2] Attached to the invoices for the silos was the abbreviated version of the Terms of Sale from the auction catalogue. **See** note 1, *supra*.

In June 2009, Chestnut Ridge sued for a declaratory judgment that Progressive's damages for non-delivery of the silos would be limited to a return of the purchase price.[3] Progressive filed a counterclaim that included counts for bad faith, breach of contract/repudiation, replevin, fraud, and conversion. Progressive asserted that having the silos would have allowed it to purchase resin at a cheaper price because the resin could be delivered via railcar rather than truck. Progressive sought consequential damages in the amount of $27,000 per month for thirty-one months, as well as punitive damages and attorneys' fees.

On October 19, 2010,[4] the trial court granted summary judgment in favor of Progressive on Chestnut Ridge's declaratory judgment action, finding that Progressive's damages would not be limited to return of the purchase price.[5] In late 2010, Chestnut Ridge went out of business[6] and Progressive was sold to Alpha Packaging. In January 2011, after Chestnut

_____

[3] In 2008, Progressive had attempted to sue Chestnut Ridge for non-delivery of the silos in Cuyahoga County, Ohio; that case was dismissed due to lack of personal jurisdiction over Chestnut Ridge. *See Progressive Plastics, Inc. v. Chestnut Ridge Group, L.P.*, No. CV08661818 (Cuyahoga Cty, OH, June 1, 2009).

[4] The order is dated October 18, 2010.

[5] Chestnut Ridge appealed this decision, but a panel of this Court quashed the appeal as interlocutory on November 23, 2011. *See Chestnut Ridge v. Progressive Plastics, Inc.*, 38 A.3d 931 (Pa. Super. 2011) (unpublished memorandum).

[6] When Chestnut Ridge went out of business, it sold its remaining three silos (which had not previously been sold) at auction for $34,500.

Ridge had stopped operations, it delivered the three silos to Alpha Packaging, which in turn sold them at auction for $37,500.

Trial on Progressive's counter-claims began on May 5, 2015. That day, Chestnut Ridge filed a motion in *limine* to exclude Progressive's tort claims on the basis of the "gist of the action" doctrine. Chestnut Ridge stipulated that it breached the contract between the parties when it failed to deliver the silos, but argued that Progressive either suffered no damages or could have mitigated its damages. The court's ruling on the motion to exclude the tort claims does not appear in the record; however, the trial court addressed only damages for breach of contract in its trial rulings, and the parties do not raise issues regarding the tort claims on this appeal.

Progressive presented the video deposition of Brian Gill (Progressive's former vice president of finance and materials management), and the testimony of Duke Busa (Progressive's owner). Chestnut Ridge presented the testimony of Matthew Streett (who had worked in the accounting department of Chestnut Ridge), portions of the video deposition of Gerald Litchney (Progressive's former plant engineer), and the testimony of Catherine Marchelletta (an expert in business damages). In rebuttal, Progressive read portions of the transcript from Litchney's deposition.[7]

---

[7] After Progressive rested its case-in-chief, Chestnut Ridge moved for nonsuit, which was denied. Both parties moved for a directed verdict at the conclusion of the testimony, and both of those motions were denied.

Initially, the eleven-person jury returned a verdict awarding Progressive zero damages, but two jurors disagreed with that verdict. The judge sent the jury back for further deliberations, and the jury then returned a verdict awarding $27,000 to Progressive, with only one juror in opposition. On May 21, 2016, Progressive filed a motion for post-trial relief seeking modification of the verdict to award it damages of $837,000, judgment notwithstanding the verdict, or a new trial.[8] On April 4, 2016, Progressive's post-trial motion was denied by orders of the court.[9] Chestnut Ridge did not file a post-trial motion. Judgment was entered on a praecipe filed on May 25, 2016.

Progressive appealed on April 26, 2016,[10] and raises the following issues:

> 1. The evidence presented to a jury on damages in a breach of contract case for non-delivery of three (3) used plastic resin silos established that Appellant Progressive Plastics, Inc. ("PPI") was damaged in the amount of $27,000.00 per month for each month it was without the silos. The only defense mounted by Appellee Chestnut Ridge Group, LP d/b/a Chestnut Ridge [B]everage ("Chestnut Ridge") was that PPI failed to mitigate its

---

[8] Oral argument on the motion was scheduled for March 30, 2016, by order dated January 22, 2016. Both parties thereafter filed briefs on the motion. The transcript of the argument on the motion is not included in the certified record.

[9] The court entered separate orders denying the motion for a new trial and the motion for judgment notwithstanding the verdict. Both orders were dated March 30, 2016.

[10] Although Progressive appealed prematurely, appellate jurisdiction was perfected on May 25, 2016, when judgment was entered. *See* Pa.R.A.P. 905(a)(5); *Jones v. Rivera*, 866 A.2d 1148, 1149 n.1 (Pa. Super. 2005).

damages, which it argued PPI could have done by purchasing comparable replacement silos. The jury awarded PPI exactly $27,000.00, equal to one (1) month's damages. However, there was no evidence in the case that comparable replacement silos were available for purchase one (1) month after Chestnut Ridge's breach. Did the trial court err in failing to direct a verdict for PPI, or order a new trial, when the jury's verdict is not supported by the evidence?

2. The only evidence presented by Chestnut Ridge concerning the availability of replacement silos was a quote from Conair for three (3) silos of the same make and model purchased by PPI from Chestnut Ridge. However, these Conair silos were new and cost $192,507.00, whereas the silos purchased from Chestnut Ridge were used and cost only $27,000.00. However, the jury merely awarded PPI $27,000 in damages, failing to include the cost of the replacement silos in the damages. Assuming, *arguendo*, that the evidence supported a finding that PPI could have mitigated its damages by purchasing these substantially more expensive silos, did the trial court err in failing to direct a verdict for PPI to include the additional cost of the replacement silos, or otherwise order a new trial?

3. Early on in the trial, the trial court ruled that the Pennsylvania Uniform Commercial Code ("UCC") was not applicable to the transaction at issue. Despite this, Chestnut Ridge presented testimony of an expert witness on damages, who testified (over PPI's objection) to the UCC formula for damages. Did the trial court err in failing to grant PPI a new trial based on the irrelevant damage testimony by Chestnut Ridge's expert?

4. As part of discovery in this case, Chestnut Ridge took a videotaped fact deposition of PPI's former employee Jerry Litchney. At trial, Chestnut Ridge showed the jury portions, but not all, of Mr. Litchney's testimony. Did the trial court err in failing to grant PPI a new trial based on this improper presentation of testimony?

5. At the conclusion of the case, the trial court submitted a Verdict Slip to the jury. The Verdict Slip asked the jury whether PPI could have mitigated its damages by the timely purchase of substitute silos. The Verdict Slip did not instruct the jury that any mitigation efforts must only be "reasonable" and improperly focused on one form of mitigation, i.e. purchasing replacement silos. The Verdict Slip also implied that it was PPI's burden to

prove it could not mitigate, as opposed to forcing Chestnut Ridge to prove PPI failed to mitigate. Did the trial court err in failing to grant a new trial based on the improper verdict slip?

Progressive's Brief at 4-7 (suggested answers omitted).

Chestnut Ridge filed a conditional cross-appeal[11] on May 9, 2016, and raises the following:

I. Did the trial court err as a matter of law by interpreting the damages limitation provision in the subject auction agreement to apply only to Chestnut's agent — the auctioneer?

II. Did the trial court err as a matter of law by finding that the subject silos were not "goods" under the UCC even though the evidence was undisputed that they were moveable?

III. Did the trial court abuse its discretion by refusing to admit any portion of the first deposition of Brian Gill who resided in Ohio (and later Georgia) and thus was indisputably unavailable for trial?

Chestnut Ridge's Brief at 37.[12]

## Progressive's Appeal

### *The Jury's Damage Calculation*

In its first and second issues, Progressive challenges both the sufficiency and weight of the evidence supporting the jury's award of damages. We review these claims under the following standards:

[T]he proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is

_____

[11] The notice of appeal was titled a conditional cross-appeal, but the notice itself did not state any conditions.

[12] The trial court did not order the parties to file a 1925(b) statement of errors complained of on appeal. The court filed a Rule 1925(a) opinion that addressed Progressive's issues, but not those raised by Chestnut Ridge.

whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Ferrer v. Trustees of Univ. of Pennsylvania*, 825 A.2d 591, 595 (Pa.

2002) (citations omitted).

The general rule for a grant of a new trial on the basis that it is against the weight of the evidence allows the granting of a new trial only when the jury's verdict is [so] contrary to the evidence as to shock one's sense of justice and a new trial is necessary to rectify this situation. Unlike appellate review of a refusal to enter a judgment N.O.V., where the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict winner, the appellate court, in reviewing the refusal to grant a new trial, ordinarily considers all of the evidence. The court is not required to consider the evidence in the light most favorable to the verdict winner when passing on the question of whether a verdict is against the weight of the evidence. Rather, the court is to view all of the evidence. Moreover, a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the fact-finder could have decided in favor of either party.

*Lanning v. West*, 803 A.2d 753, 765-66 (Pa. Super. 2002) (citations

omitted). Finally,

Where an appellant's claim arises from a challenge to the jury's determination of damages, our review is highly circumspect:

The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.

- 9 -

> If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

**Betz v. Erie Ins. Exch.**, 957 A.2d 1244, 1264 (Pa. Super. 2008) (citations omitted), **appeal denied**, 995 A.2d 350 (Pa. 2010).

Progressive argues that the jury's award of damages is not supported by the evidence as it only represents one month's worth of the consequential damages claimed by Progressive ($27,000), and not thirty-one months' worth ($837,000). Progressive claims that there was no evidence that it could have mitigated its damages after one month, as there was no evidence that substitute silos listed in a Conair Group quote from 2009 would have been available at the time of breach (in 2008). Progressive's Brief at 22-24. Moreover, according to Progressive, the Conair silos were brand new and would have cost Progressive $192,507; purchasing them at such a disproportionate cost from the Chestnut Ridge silos (approximately $24,000) would have been an unreasonable mitigation effort. **Id.** at 19-22.[13] Alternatively, Progressive argues that if the jury found that Progressive had a duty to mitigate, then the jury should have awarded it one month of its $27,000 consequential damages plus the cost of the replacement silos ($192,507), and that, as it did not, the court should have granted

---

[13] Progressive also argues that the evidence showed that three Imperial Industries steel silos would have cost $90,000 and required excessive maintenance.

Progressive's motion for judgment notwithstanding the verdict ("n.o.v.") or a new trial on damages. *Id.* at 24-26.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael F. Marmo, we conclude that Progressive's claims must fail. *See* Trial Ct. Op., 7/13/16, at 3-5 (finding that (1) Progressive's calculation of damages relied almost exclusively on the testimony of Mr. Busa, its owner, which the jury was free to reject; (2) Mr. Busa's testimony "was conflicting and changing as to the actual damages resulting from the breach [and] somewhat refuted by Progressive's former plant manager, Jerry Litchney, who testified the silos would not have affected how Progressive operated or the amount of resin Progressive would have ordered by railcar," and was further called into question by the circumstances of the 2008 financial collapse and contradicted by the fact that Progressive opted not to purchase or lease replacement silos following the breach; (3) "it cannot be assumed that the award of $27,000 in damages by the jury represented only one month of damages due to mitigation . . . [as] the jury made no express findings of Progressive's monthly damages or as to whether Progressive could have mitigated its damages after only one month by purchasing or leasing replacement silos"; and (4) because the jury initially rejected the claim altogether, the final award of $27,000 was likely a compromise verdict,[14]

---

[14] As stated by the trial court:

*(Footnote Continued Next Page)*

- 11 -

and "appears to be a reasonable compromise reached by the jury and is supported by ample evidence in this case"). The evidence was sufficient to support a judgment of $27,000, **Ferrer**, 825 A.2d at 595, and the weight of the evidence presented by both parties does not shock our sense of justice. **Lanning**, 803 A.2d at 765-66. We therefore affirm on this issue on the basis of the trial court's opinion.

*Expert's Damage Calculation*

Progressive next complains that the trial court erred in allowing Chestnut Ridge's expert, Ms. Marchelletta, to testify regarding her calculation of damages. Progressive's Brief at 26-27. Progressive argues that although the court ruled the UCC inapplicable to a damages calculation in this case, Ms. Marchelletta's testimony invoked the UCC calculation (though it did not specifically reference the UCC).[15] Progressive contends that this

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

> Compromise verdicts are verdicts where the fact-finder is in doubt as to the defendant's liability *vis-à-vis* the plaintiff's actions in a given suit but, nevertheless, returns a verdict for the plaintiff in a lesser amount than it would have if it was free from doubt. Compromise verdicts are favored in the law.

Trial Ct. Op. at 4 (quoting **Morin v. Brassington**, 871 A.2d 844, 852-53 (Pa. Super. 2005)).

[15] Section 2713(a) of the UCC, titled "Damages of buyer for nondelivery or repudiation," states —

> the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price, together with any incidental and consequential damages . . . , but less expenses saved in consequence of the breach by the seller.

*(Footnote Continued Next Page)*

inconsistency was confusing to the jury and that the admission of Ms. Marchelletta's testimony warrants a new trial.

"Admissibility of expert testimony is left to the sound discretion of the trial court, and as such, this Court will not reverse the trial court's decision absent an abuse of discretion." **Snizavich v. Rohm & Haas Co**., 83 A.3d 191, 194 (Pa. Super. 2013), **appeal denied**, 96 A.3d 1029 (Pa. 2014). To warrant a new trial, "an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Ettinger v. Triangle-Pacific Corp.**, 799 A.2d 95, 110 (Pa. Super. 2002), **appeal denied**, 815 A.2d 1042 (Pa. 2003).

> Regarding this issue, the trial court found:
>
> Chestnut's expert never testified that she was applying the UCC's measure of damages. While Chestnut's expert may have incorporated some of the same concepts embodied in the UCC, this is to be expected as there are only so many ways to calculate damages. Chestnut was free to offer expert testimony to rebut Mr. Busa's calculation of damages and Progressive had ample opportunity to cross examine Chestnut's expert. There is no evidence the jury was confused or prejudiced by the damages formula presented by Chestnut's expert, or that the jury even adopted or considered such formula in reaching its verdict.

Trial Ct. Op., 7/13/16, at 5. We agree, and add that the trial court duly instructed the jury (1) on how to calculate damages (and did not do so in a way that mirrored the UCC), **see** N.T. Trial, at 484-86, (2) to judge the credibility of each witness, **see id.** at 490-94, and (3) that it was free to

_(Footnote Continued)_ ───────────────

13 Pa.C.S. § 2713(a).

reject the opinion of the expert, **see id.** at 496-98. We therefore see no reason to conclude that the trial court abused its discretion in admitting the expert testimony or that its admission was so prejudicial to Progressive as to warrant a new trial. **See Snizavich**, 83 A.3d at 194; **Ettinger**, 799 A.2d at 110.

### Litchney's Video Deposition

Progressive argues that the trial court erred in allowing Chestnut Ridge to play portions of the seven-hour video deposition of Gerald Litchney. Progressive's Brief at 27-29. Progressive argues that while it had agreed to the portions of the video that would be played on the first day of trial, Chestnut Ridge played other portions on the second day of trial without giving adequate notice to Progressive. According to Progressive, lack of notice, in combination with the piecemeal way in which the video was edited and presented, was prejudicial to Progressive's ability to confront the evidence. We reiterate that the admission of evidence is left to the sound discretion of the trial judge. **See Valentine v. Acme Markets, Inc.**, 687 A.2d 1157, 1160 (Pa. Super. 1997).

After a review of the record, the briefs of the parties, the applicable law, and the trial court opinion, we conclude that this issue merits no relief. **See** Trial Ct. Op., 7/13/16, at 6 (finding that each party was given opportunity to use the entirety of the video deposition, and that Progressive elected to read only portions of the deposition to the jury in rebuttal). The trial court did not abuse its discretion in allowing portions of the deposition

to be played by Chestnut Ridge, as it allowed Progressive the same opportunity. **Valentine**, 687 A.2d at 1160.

*Verdict Slip*

Progressive's final complaint is that the verdict slip was misleading. Progressive's Brief at 29-31. The verdict slip's first question was:

> Do you find that Progressive Plastics sustained damages as a proximate result of Chestnut's breach of the auction contract?

The second question was:

> Taking into account Progressive's duty to mitigate its damages, do you find that Progressive sustained damages as a proximate result of the breach of the auction contract that could not have been prevented by the timely purchase of substitute silos?

Progressive argues that by mentioning Progressive's "duty to mitigate" in the second question, the verdict slip suggested that Progressive, and not Chestnut Ridge, bore the burden to prove whether or not Progressive had mitigated its damages. Progressive also argues that the language of the verdict slip indicated that purchasing substitute silos was the only form of mitigation, a reasonable form of mitigation, or an obligatory form of mitigation, rather than more generally questioning whether Progressive could have mitigated its losses through "reasonable actions." Finally, Progressive argues that by referring to "substitute silos," the verdict slip indicated that there were comparable silos available for purchase, contrary to the facts presented at trial.

> Generally, a trial judge in Pennsylvania may grant or refuse a request for special findings on the basis of whether such would add to the logical and reasonable understanding of the issue. We

will not disturb a trial judge's decision to grant or refuse the request absent an abuse of discretion.

*Century 21 Heritage Realty, Inc. v. Bair*, 563 A.2d 114, 116 (Pa. Super. 1989).

Here, the trial court stated that it did not believe the verdict slip was misleading regarding the burden of proof, and noted that it charged the jury that "**the burden of proof is on the defendant to demonstrate the plaintiff failed to mitigate the damage** incurred." Trial Ct. Op., 7/13/16, at 6-7 (emphasis added by trial court). The trial court explained that the mention of substitute silos on the verdict slip was proper because Chestnut Ridge had argued at trial that Progressive had the duty to mitigate through the purchase of substitute silos. *Id.* at 7.

We agree with the trial court that the verdict slip was not confusing and represented the positions of the parties at trial. We note that in addition to the court's charge to the jury regarding the burden of proof, the trial court also instructed the jury that mitigation involves reasonable actions to reduce or eliminate the damage incurred, and that the question for the jury was whether Progressive's response to the breach was reasonable in light of all facts and circumstances at the time the breach occurred. *See* N.T. at 484-86. We therefore find that the trial court did not abuse its discretion in using the verdict slip. *See Century 21 Heritage Realty*, 563 A.2d at 116.

**Chestnut Ridge's Cross-Appeal**

*Summary Judgment*

Chestnut Ridge complains that the trial court erred when it granted Progressive's motion for summary judgment in Chestnut Ridge's declaratory judgment action,[16] because language in Paragraph 9 (titled "AUCTIONEER'S LIABILITY") of the auction's Terms of Sale states, "in all instances, the highest bid shall be accepted by both the buyer and seller as the value against which all claims for loss or damage shall lie." Chestnut Ridge contends that this provision limits its liability for non-delivered items to the purchase price paid by Progressive, the buyer. Chestnut Ridge's Brief at 45-49. Chestnut Ridge also argues that because Davis (the auctioneer) was acting as Chestnut Ridge's agent, Chestnut Ridge may invoke the same contractual defenses against Progressive as could Davis, including defenses under Paragraph 9. *Id.* at 41-44.[17]

_____

[16] Chestnut Ridge's failure to file a post-verdict motion does not preclude our review of this issue, as post-verdict motions are not required for preservation of a summary judgment ruling. *See* Pa.R.C.P. 227.1(c), note. Although Chestnut Ridge's May 9, 2016 cross-appeal preceded entry of final judgment on May 25, 2016, it, like Progressive's premature appeal, was perfected once final judgment was entered. *See* note 10, *supra*. *See also* ***Herder Spring Hunting Club v. Keller***, 93 A.3d 465, 465 n.1 (Pa. Super. 2014) (appeal from order granting summary judgment proper only after final disposition of counterclaims).

[17] Progressive contends that this theory was waived by Chestnut Ridge's failure to assert it before the trial court in response to Progressive's motion for summary judgment. Progressive's Reply Brief at 13-14. Our review of the record discloses that (1) Chestnut Ridge raised this theory in its preliminary objections to Progressive's counterclaim; (2) Progressive preemptively raised

*(Footnote Continued Next Page)*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Alan Hertzberg,[18] we conclude that there is no merit to this issue. **See** Trial Ct. Op., 1/19/11, at 3-5 (finding that (1) Paragraph 9 of the Terms of Sale limited only the liability of the auctioneer (Davis) and not the seller (Chestnut Ridge) because: (a) the title of the paragraph is "AUCTIONEER'S LIABILITY," and (b) the second clause of the second sentence in the paragraph, upon which Progressive relies, is preceded by a conjunctive "and," relating it to the first clause of the sentence (which specifically describes the liability of the auctioneer); and (2) in any event, the second clause of Paragraph 9's second sentence controls only *the value of the item* in any dispute, and does not preclude claims for consequential damages, punitive damages, or attorneys' fees, or dictate the amount of those claims).

Our agreement with the trial court's view that Paragraph 9 applies only to the auctioneer is buttressed by the fact that Paragraphs 7 and 11 of the Terms of Sale expressly refer to both the auctioneer (the principal's agent)

---

*(Footnote Continued)* _____

the theory in support of its motion for summary judgment; and (3) part of Chestnut Ridge's response to Progressive's motion for summary judgment distinguished the cases cited by Progressive in relation to this theory. In light of the foregoing, we decline to find waiver.

[18] Upon Chestnut Ridge's original appeal of this matter, which was quashed as interlocutory, **see** note 5, *supra*, Judge Hertzberg issued a Rule 1925(a) opinion addressing this issue. Judge Hertzberg did not preside at trial following his disposition of the motion for summary judgment.

**and** the principal, but Paragraph 9 refers only to the auctioneer.[19] This difference evinces that Paragraph 9 limits only the liability of the auctioneer, and not the principal or seller. *See Allegheny Inspection Serv., Inc. v. N. Union Twp.*, 964 A.2d 878, 888 (Pa. 2009) ("the mention of one thing implies the exclusion of all others"); *cf.* Restatement (Second) of Agency § 146 (1958) ("If an agent of a disclosed or partially disclosed principal makes an authorized contract with a third person, the liability of the principal thereon depends upon the agreement between the agent and the other party as to the parties to the transaction. . . . There may be an agreement that the principal alone is a party, that the agent alone is a party, or that the principal and the agent are both to be parties").

### Applicability of the UCC

In its second issue, Chestnut Ridge complains that the trial court erred when ruling that the Pennsylvania UCC did not apply to the sale of Chestnut Ridge's silos and that damages on Progressive's counterclaim should not be calculated pursuant to the UCC. Chestnut Ridge's Brief at 50-52. However,

---

[19] According to Paragraph 7, " . . . the Auctioneer **and principal** [are not] responsible if all or any part of such purchases are lost, stolen, damaged or destroyed from any cause whatsoever," and, according to Paragraph 11, "[n]either the auctioneer **nor his principal** shall be liable by reason of any defect in or condition of the premises on which the sale is held."

we deem this issue to be waived by Chestnut Ridge's failure to preserve it in a post-trial motion.[20]

Chestnut Ridge raised the UCC issue before the trial court in a pretrial brief[21] and in a May 13, 2015 request for jury instructions that was rejected by the trial court.[22] However, Chestnut Ridge did not revive these arguments in a post-trial motion following entry of the adverse verdict on Progressive's counterclaim, as required by Rule 227.1 of the Rules of Civil Procedure. As noted by our Supreme Court,

---

[20] We may raise this issue *sua sponte* because it affects the appealability of the issue. **See, e.g.**, **Warfield v. Shermer**, 910 A.2d 734, 737 (Pa. Super. 2006); **Borough of Harveys Lake v. Heck**, 719 A.2d 378, 380 (Pa. Cmwlth. 1998) (raising absence of post-trial motions *sua sponte* and dismissing appeal).

[21] Two days after trial began, on May 7, 2015, Chestnut Ridge presented a "Brief on the Applicability of the Pennsylvania Uniform Commercial Code," but the record is unclear as to whether this brief was submitted in relation to a motion. The trial court considered the brief and the arguments of the parties during trial. **See** N.T. at 139-40, 148-61. While it is unclear when the court ruled on the "motion," the trial transcript suggests that at some point the court decided that the UCC would not control the damages calculation. **See** N.T. at 303-04 (Progressive objecting to Ms. Marchelletta's testimony, which used the same calculation of damages as the UCC); **id.** at 402-03 (Progressive objecting to the admission of Chestnut Ridge's Ex. 25, Ms. Marchellata's evaluation of damages). In view of our disposition, we do not need to address Progressive's argument that the failure to enter an order with the court's ruling on the docket in violation of Pa.R.A.P. 301(a)(1) provides an alternate basis to find waiver. **See** Reply Brief of Progressive at 34.

[22] **See** N.T. at 412-13, 423-26 (ruling excluding jury instructions and interrogatories on UCC damages and statement by Progressive that "the Court has previously ruled that the UCC is not part of the case for the reasons that were articulated at that time").

Rule 227.1(b) establishes that issues not preserved . . . in post-trial motions, *see* Pa.R.C.P. 227.1(b)(2), are waived. As this Court ruled in ***Lane Enterprises, Inc. v. L.B. Foster Co.***, 551 Pa. 306, 710 A.2d 54 (1998), Rule 227.1 "requires parties to file post-trial motions in order to preserve issues for appeal," and "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes." ***Id.*** at 54.

***Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc.***, 155 A.3d 39, 44 (Pa. 2017); ***see also Vautar v. First Nat'l Bank of Pennsylvania***, 133 A.3d 6, 10 (Pa. Super. 2016) (*en banc*).[23] Therefore, Chestnut Ridge's failure to file a post-verdict motion on this issue is fatal to our ability to review it.

### *Deposition of Brian Gill*

In its third and final issue, Chestnut Ridge complains that the trial court erred in excluding from evidence the deposition of Brian Gill.[24] We deem this issue to be waived as well.

---

[23] Chestnut Ridge's failure to file a post-verdict motion is not excused by its status as a cross-appellant. Although this court has relaxed waiver when a non-aggrieved party fails to file a "cautionary" post-verdict motion in anticipation of an aggrieved party's appeal, ***see Jara v. Rexworks Inc.***, 718 A.2d 788, 792 (Pa. Super. 1998), ***appeal denied***, 737 A.2d 743 (Pa. 1999), here Chestnut Ridge was an aggrieved party by virtue of the judgment entered against it, and therefore was obligated to file its own appeal to address any adverse rulings of the trial court. The decision rejecting the UCC's damages measure was such an adverse ruling, and this issue could be preserved only by filing a post-verdict motion.

[24] Once again, Progressive argues that this issue was waived for failure to enter an order on the docket in violation of Pa.R.A.P. 301(a)(1), Reply Brief of Progressive at 34, and once again, we do not reach that issue. ***See*** note 21, *supra*.

Brian Gill was first deposed on March 20, 2015. On April 28, 2015, Progressive filed notice that a second deposition "for use at trial" would be taken on April 29, 2015, as it had come to Progressive's attention that Gill would not be available to testify at trial. The April 29th deposition was video recorded, and counsel for both parties were present and questioned Gill. At trial on May 6, 2015, after the video of the April 29th deposition was played for the jury, Chestnut Ridge moved for portions of the transcript of the March 20, 2015 deposition to be admitted into evidence. The court denied the motion, and ruled that the testimony from the March 20 deposition would be excluded. *See* N.T. at 142-48 (discussing off-the-record ruling made the previous evening). Chestnut Ridge filed a written motion for reconsideration on May 7, 2015, but no formal action appears to have been taken on that motion.[25]

Chestnut Ridge did not re-raise its objection to this evidentiary ruling in a Rule 227.1 motion after the verdict was rendered. Therefore, for the reasons set forth above in relation to Chestnut Ridge's argument regarding applicability of the UCC, we conclude that this issue is waived and we are unable to review it.

---

[25] The motion was docketed on May 13, 2015, but there is no indication that the court formally addressed it. *See* N.T. at 147-48 (statement by court that, "A brief was submitted for consideration and that will be part of the record so I think we've got that issue out of the way and I will read this later").

In light of the forgoing, we affirm the judgment entered by the trial court. As we affirm in part on the bases of the trial court's opinions, the parties are instructed to attach the opinions of January 19, 2011, and July 13, 2016, to any filings referencing this Court's decision.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2017