IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Morgan Landfill Company, Inc., :
                          Appellant      :
                                    :
           v.                  :  No. 149 C.D. 2020
                                    :  SUBMITTED: February 19, 2021
Berks County Solid Waste Authority  :
and County of Berks, Pennsylvania   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: October 15, 2021

New Morgan Landfill Company, Inc. (New Morgan) appeals from the January 9, 2020 Order Entering Final Judgment (January 9, 2020 Order) entered by the Court of Common Pleas of Berks County (Trial Court), granting in part and denying in part the Motion for Declaratory Judgment Consistent with the Jury Verdict filed by Berks County Solid Waste Authority (Authority) and the County of Berks, Pennsylvania (County) (together, Defendants) and entering final judgment in the case. Defendants have also filed with this Court an Application to Quash the appeal, asserting that although New Morgan filed a timely Post-Trial Motion after the jury verdict, it did not file a second post-trial motion after the Trial Court's entry of the declaratory judgment, thereby waiving New Morgan's issues on appeal. For the reasons that follow, we deny the Application to Quash and affirm the Trial Court's January 9, 2020 Order.

## Factual and Procedural History

### 1. Background

This appeal stems from a 30-year contractual relationship between the County and New Morgan's predecessor-in-interest, Browning Ferris, Inc. (BFI). In the late 1980s, in response to the trash disposal crisis in Southeastern Pennsylvania at that time,[1] BFI sought to construct a landfill in the County, which the County opposed. The County filed a condemnation action to acquire the land on which BFI intended to develop its landfill.

In 1989, BFI and the County settled the condemnation action by entering into a Disposal Services Agreement (1989 DSA), which was modified several times between 1989 and 2013. The original 1989 DSA provided that: (1) BFI would construct a landfill in the County; (2) BFI would provide disposal capacity for waste generated within the County; and (3) the County would require waste generated within the County to be disposed at the landfill. BFI also agreed to pay the County between $3.00 and $6.00 for each ton of waste disposed at the landfill that was generated *outside the County*; these fees for out-of-county waste are known as "host fees." The host fee provision in the 1989 DSA stated in pertinent part:

> (d) <u>Host Fee for Out-of-County Waste</u>. (i) . . . BFI shall collect and pay to the County the Host Fee for each Ton of Acceptable Waste disposed of at the Facilities which was generated outside the County. The Host Fee shall be determined by reference to the Tipping Fee[2]

---

[1] *See* New Morgan Br. at 18 ("In the wake of stricter environmental regulations in the mid-1980s, [many] local waste facilities[] . . . closed, and Berks County, among others, faced a worsening shortage of landfill capacity."); *see also* Third. Am. Compl. ¶¶ 21-29.

[2] "Tipping fees" are fees that "cover disposal costs in the landfills as well as administrative costs and costs of other aspects of [a] county-wide waste disposal plan." *Pa. Waste Indus. Ass'n v. Monroe Cnty. Mun. Waste Mgmt. Auth.*, 80 A.3d 546, 548 (Pa. Cmwlth. 2013) (*en banc*).

payable to BFI with respect to such out-of-county Acceptable Waste[]
. . . .

. . . .

Notwithstanding the foregoing, *if the County enters into any agreement with respect to a privately-owned landfill in the County, and such agreement provides for a host fee lower than that which is provided in . . . Section 2.01(d) [of the 1989 DSA], the Host Fee provided in this Agreement shall be reduced to the extent that it exceeds the host fee provided in any such agreement.*[3]

Reproduced Record (R.R.) at 214a-15a (emphasis added).

In 1988, the General Assembly enacted the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, No. 101, *as amended*, 53 P.S. §§ 4000.101-4000.1904, commonly known as "Act 101." Act 101 required each county to adopt and periodically revise a waste management plan for municipal waste and to submit the plan to the Pennsylvania Department of Environmental Protection (DEP) for approval. Section 505(b)(5) of Act 101, 53 P.S. § 4000.505(b)(5). Act 101 also gave each county the authority to enact "flow control" ordinances, which would direct that municipal waste generated within the county's boundaries be processed or disposed only at specific "designated" waste facilities. Section 303(e) of Act 101, 53 P.S. § 4000.303(e).[4]

---

[3] New Morgan refers to this paragraph of the 1989 DSA as the "level playing field" provision.

[4] Our Court has explained the purpose of Act 101 as follows:

In Act 101, the General Assembly addressed the municipal solid waste industry in order to provide a comprehensive program of ensuring adequate planning and implementation of future disposal capacity as well as encouraging more recycling efforts. Act 101 requires counties to adopt a solid waste management plan and to submit the plan to DEP for approval. Act 101 requires

**(Footnote continued on next page…)**

3

Following the enactment of, and in response to, Act 101, the County developed and implemented the Berks County Municipal Waste Management Plan (Act 101 Plan) in September 1990. DEP approved the County's Act 101 Plan in 1991. The Act 101 Plan incorporated the terms of the 1989 DSA and designated Conestoga Landfill as a disposal site for municipal waste generated both within and outside the County.[5]

To resolve litigation related to the parties' original agreement,[6] in 1990, the County and BFI entered into a Stipulation (1990 Stipulation). The 1990 Stipulation provided that the County would have the right to enter into an agreement with a specified entity for an incinerator and to direct a certain volume of waste generated in the County to that incinerator. The 1990 Stipulation also provided that BFI was obligated to provide disposal capacity for waste generated in the County for a period of 25 years from the commencement date of the 1989 DSA.

that the counties revise the plan every 10 years. In order to secure DEP approval, the plan must provide for county-wide solid waste management and must ensure at least 10 years of available disposal capacity. The plan also designates those waste disposal facilities that are permitted by DEP under the Solid Waste Management Act . . . , [Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101-6018.1003,] to receive municipal solid waste generated within the county.

*Pa. Waste*, 80 A.3d at 549 (footnote omitted); *see* Section 102(b)(10) of Act 101, 53 P.S. § 4000.102(b)(10) (stating that one purpose of Act 101 is to "[s]hift the primary responsibility for developing and implementing municipal waste management plans from municipalities to counties").

[5] The 1989 DSA defined "designate[d]," for purposes of the Act 101 Plan, as "direct[ed] by the County of the flow of Solid Waste generated within the County to disposal facilities as authorized by Act 101 and as specified in the [Act 101] Plan and/or the Ordinance." R.R. at 204a.

[6] The 1990 litigation involved a dispute over whether the County had the right to contract with another entity to direct waste generated within the County to an incinerator.

4

In March 1992, the County enacted a flow control ordinance (Ordinance) as contemplated by Act 101. The Ordinance required that all municipal waste generated within the County be disposed of only at facilities designated by the County pursuant to its Act 101 Plan. The Ordinance also reflected the County's intent to create the Authority to implement and administer its Act 101 Plan. In January 1994, BFI's successor-in-interest, New Morgan, opened Conestoga Landfill.

In May 1994, the United States Supreme Court decided *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 386 (1994), which struck down as unconstitutional a local ordinance that "require[d] all solid waste to be processed at a designated transfer station before leaving the municipality."

Thereafter, in August 1994, the parties settled another round of litigation[7] by entering into a Stipulation of Settlement and Order (1994 Stipulated Order), which further amended the 1989 DSA. The 1994 Stipulated Order stated that *C&A Carbone* "rendered some of the provisions of the [1989 DSA] invalid, specifically those which require[d] the County to direct the flow of municipal waste generated within the County to the Conestoga Landfill." R.R. at 266a. The 1994 Stipulated Order also contained a host fee provision, which stated:

> [New Morgan] agrees to continue to pay the Host Fee in accordance with the schedule set forth in [Section] 2.01(d) of the [1989 DSA]. The Host Fee shall be payable as to each Ton of Acceptable Waste generated outside the geographical boundaries of the County including any Acceptable Waste generated outside the geographical boundaries of the Commonwealth of Pennsylvania (hereinafter collectively "Out-Of-County Waste").

---

[7] The 1994 litigation involved a dispute wherein New Morgan alleged that the County's failure to implement flow control to direct waste generated within the County to Conestoga Landfill breached the agreement.

*Id.*

In subsequent years, the terms and conditions of the 1989 DSA were further modified by various letters, emails, and court-approved settlement stipulations. New Morgan also entered into two letter agreements with Defendants, in 2003 and 2013, which were drafted as amendments to the 1989 DSA and the 1994 Stipulated Order. *See* R.R. at 291a-92a, 316a-17a.

A significant revision to the County's Act 101 Plan occurred in August 2014 (2014 Plan), when the County changed its Act 101 Plan from a "menu plan" – i.e., requiring that municipal waste generated within the County be disposed only at facilities designated in the plan – to an "open plan," allowing municipal waste to be disposed at any permitted waste facility. Contrary to prior iterations of the Act 101 Plan, the 2014 Plan expressly stated that the "County will not designate any disposal facilities." R.R. at 5104a.

On September 16, 2016, New Morgan provided notice to the County of its intent to terminate the parties' agreement early for cause, pursuant to Section 6.07(b) of the 1989 DSA.[8]

## 2. The Instant Litigation

New Morgan initiated this action in 2016 by filing a Complaint against Defendants, asserting claims for breach of contract and declaratory judgment. In September 2018, New Morgan filed a Third Amended Complaint, which was the operative complaint at the time of trial.

In its Third Amended Complaint, New Morgan alleged in pertinent part:

---

[8] Section 6.07(b) of the amended 1989 DSA provided that "[New Morgan] shall have the right to terminate this Agreement, and seek any remedy which may be available to [New Morgan] at law or in equity, if the County fails to comply with any of its obligations under Section 5.01 [of the 1989 DSA] or the [1990] Stipulation." R.R. at 239a.

7. . . . [I]n August 2014, the Defendants breached the 1989 [DSA], destroying . . . [New Morgan's] contractual rights.

8. Specifically, as part of an Act 101 plan revision, the Defendants abandoned [the] County's "menu plan" framework which, for nearly 25 years, had—as promised—designated Conestoga Landfill as a disposal site for municipal waste. In its place, [the] County adopted an "open plan" that by its very nature failed to designate any landfills.

9. Further, as part of switching from its longstanding "menu plan" to an "open plan," the Defendants necessarily entered into an agreement with each other, an agreement that, with respect to Pioneer Crossing Landfill, a privately-owned facility in the County other than Conestoga [Landfill], provided for it to operate without paying any host fees. Despite that, [the] County did not correspondingly eliminate [New Morgan's] host fee payment obligation, thus violating the contract's "level playing field" provision.

. . . .

12. The Defendants' above material breaches of their contractual promises entitled [New Morgan] to terminate the parties' 1989 [DSA], which it did on September 19, 2016. . . .

13. The Defendants' above material breaches also financially harmed [New Morgan] entitling it to recover damages, including[,] without limitation, all host fees [the] County wrongfully collected from August 28, 2014 to the present, together with pre- and post-judgment interest, and reasonable attorneys' fees and costs as provided for by contract.

Third Am. Compl. ¶¶ 7-9, 12-13. New Morgan further averred:

200. [New Morgan] has performed all of its duties under the 1989 [DSA] to both Defendants, including paying [the] County more than $75 million in "host fees" since the January 1994 opening of the Conestoga Landfill disposal facility in New Morgan Borough, Berks County.

201. [Defendants] both materially breached the 1989 [DSA] in August 2014 when the Defendants abandoned [the] County's longstanding "menu plan" and instead adopted an "open plan," which by its very nature failed to "designate" any landfills, including Conestoga Landfill.

202. Those acts and omissions materially breached the Defendants' promises to incorporate the 1989 [DSA] into [the] County's [Act 101 Plan], including by designating Conestoga Landfill in the plan as a disposal site for municipal waste, from both within and outside the County.

*Id.* ¶¶ 200-02. New Morgan requested the following relief:

A. A declaratory judgment finding that Defendants materially breached the 1989 [DSA] as amended and modified;

B. An award of damages in the amount of all host fee payments [the] County collected from [New Morgan] from August 28, 2014 through the entry of judgment, an amount which currently exceeds $7.3 million and is continuing to grow;

C. Pre- and post-judgment interest;

D. Reasonable attorneys' fees and costs as provided by contract;

E. A declaratory judgment finding [that New Morgan] validly and effectively terminated the 1989 [DSA] as amended and modified via its written notice dated September 19, 2016;

F. A declaratory judgment finding that [New Morgan] no longer has any obligation to pay host fees to the Defendants; and

G. Such other and further relief as the [Trial] Court deems just and reasonable.

*Id.* at 41.

In the alternative, New Morgan also asserted a claim for declaratory judgment, averring that "by its terms, the 1989 [DSA] . . . will terminate on February 11, 2019."

8

*Id.* ¶ 212. Thus, New Morgan requested that the Trial Court issue a declaratory judgment "finding that the 1989 [DSA,] as amended and modified[,] will terminate on February 11, 2019." *Id.* at 42.[9]

On October 4, 2018, Defendants filed Preliminary Objections to the Third Amended Complaint, which the Trial Court overruled in their entirety. On October 31, 2018, Defendants filed an Answer, New Matter and Counterclaims to the Third Amended Complaint (Answer). In response to New Morgan's averments, Defendants denied that New Morgan's obligation to pay host fees to the County was limited to any period of time. Answer to Third Am. Compl. ¶¶ 3, 63-64, 66. Defendants alleged:

> The 1989 [DSA] does not condition the payment of the host fee on any term. Instead, the host fee was to be paid for the life of the Conestoga Landfill so long as the Conestoga Landfill was approved as a disposal facility authorized to receive waste generated from within [the] County and waste generated outside of [the] County.

*Id.* ¶ 3. Defendants also asserted a counterclaim for declaratory judgment with regard to New Morgan's host fee obligation, seeking a declaration that New Morgan "is obligated to continue to pay host fees to the County in accordance with the schedule set forth in [Section] 2.01(d) of the 1989 [DSA] for the life of the Conestoga Landfill." *Id.* at 49.

The contract claims eventually proceeded to a jury trial. In its Pa. R.A.P. 1925(a) Opinion, the Trial Court summarized the parties' legal positions at trial as follows:

---

[9] Although New Morgan initially averred that the contract's termination date was February 11, 2019, the correct termination date was February 13, 2019, and that is the date that appeared on the jury's verdict slip. *See* R.R. at 3627a-28a; New Morgan Br., App. A.

9

Essentially, [New Morgan] argued that it agreed to pay the host fees in exchange for the County's agreement to designate [Conestoga Landfill] to receive waste (described as flow control), and that the County's subsequent adoption of an "open menu" plan constituted an attempt to circumnavigate around the preferential designation in order to permit another company to receive the County's waste. The County argued that the host fees were the quid pro quo for its withdrawal of the condemnation action allowing for construction of the landfill, and that the U[nited States] Supreme Court's decision in [*C&A Carbone*] effectively rendered flow control illegal, mandating a somewhat different approach than the one reflected in the [1989] DSA. Moreover, the County posited that its enactment of an open menu plan did not disturb the designation status of [Conestoga Landfill] or violate the County's contractual obligations because [Conestoga Landfill] remained "approved" and "included[,"] which the [C]ounty argued to be tantamount to "designated[."] [New Morgan] countered that adoption of the "open menu" plan allowed the County to effectively direct flow of the County's waste to competitors [that] did not have any host fee obligation, thereby putting [New Morgan] at an economic disadvantage and triggering a provision in the contract reducing the host fee to match what was paid by competitors (referred to by [New Morgan] as the "level playing field" clause).

Trial Ct. Op., 3/16/20, at 3.

The Trial Court also observed that, throughout trial, "no issue was as hotly and consistently contested as the host fee provision or, more precisely, *if and when it was meant to terminate*." *Id.* (emphasis added). At trial, New Morgan maintained that its host fee obligation was defined by the language in the parties' agreement, as amended by the 1990 Stipulation. In particular, New Morgan relied on Section 2.01 of the 1989 DSA, which stated that "[t]he following general responsibilities of the Parties shall be applicable, and shall continue in full force and effect *throughout the term of this Agreement*." R.R. at 211a (emphasis added). Section 2.01 contained four subsections, including Section 2.01(d), which was the host fee provision. According to New Morgan, all obligations and rights enumerated in Section 2.01 of

10

the 1989 DSA, including the host fee obligation, expired upon the expiration of the parties' contract. The 1990 Stipulation defined "the entire period of the Agreement" as "a period commencing on the Commencement Date and ending on the earlier of (i) [the] 25th anniversary of the Commencement Date; or (ii) January 1, 2021." R.R. at 261a. Based on the language in the 1989 DSA and the 1990 Stipulation, New Morgan asserted that its obligation to pay host fees terminated with the contract in February 2019.

In response, Defendants maintained that the parties never negotiated an end date to New Morgan's obligation to pay host fees to the County for out-of-county waste. Rather, Defendants contended that New Morgan was obligated to pay host fees for as long as Conestoga Landfill accepts out-of-county waste, regardless of the contract's termination date. This assertion was based, in part, on the 1994 Stipulated Order, which amended the 1989 DSA. Paragraph 1 of the 1994 Stipulated Order stated that New Morgan "agree[d] to continue to pay" host fees "in accordance with the schedule set forth in 2.01(d) of the [1989 DSA]" and that the host fee "shall be payable as to each Ton of Acceptable Waste generated outside the geographical boundaries of the County." R.R. at 266a. Defendants also asserted that New Morgan subsequently represented to the County and to DEP – in connection with its application for a DEP permit to expand the landfill – that the parties' agreement, as amended, required that it pay host fees for as long as Conestoga Landfill accepts out-of-county waste.

On September 27, 2019, following a two-week trial,[10] the jury reached a verdict. Relevant to the issues on appeal, the jury determined that the County's

---

[10] In its Pa. R.A.P. 1925(a) Opinion, the Trial Court noted that the trial record was "voluminous," comprising of "2[,]940 transcript pages[]" and "more than 9[,]400 pages of trial exhibits." Trial Ct. Op., 3/16/20, at 2.

11

contractual obligation to designate Conestoga Landfill terminated on February 13, 2019, but that New Morgan's obligation to pay host fees did not terminate on that date. The verdict slip, which had been negotiated and agreed to by the parties, included the following questions:

> 4. Do you find that the written contract between New Morgan and Defendants terminated on February 13, 2019?
>
> YES _____ NO _____
>
> ☐ If your answer to Question 4 is "Yes," go to Question 5.
>
> ☐ If your answer to Question 4 is "No," you are finished.
>
> 5. Do you find that [New Morgan's] obligation to pay host fees also terminated on February 13, 2019?
>
> YES _____ NO _____

New Morgan Br., App. A. The jury answered "YES" to Question Number 4 (Question 4) and "NO" to Question Number 5 (Question 5). *Id.*

On October 7, 2019, New Morgan filed a timely Post-Trial Motion seeking entry of judgment notwithstanding the verdict.[11] In its Post-Trial Motion, New Morgan asserted that its obligation to pay host fees terminated as a matter of law when the parties' contract expired on February 13, 2019, and, thus, the Trial Court

---

[11] Judgment notwithstanding the verdict is properly granted only where the moving party is entitled to judgment as a matter of law or where the evidence presented is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the moving party. *Carletti v. Dep't of Transp.*, 190 A.3d 766, 776 n.4 (Pa. Cmwlth. 2018). The moving party is entitled to judgment as a matter of law when the trial court reviews the record and concludes that, even with all factual inferences decided against the moving party, the law requires a verdict in its favor. *Id.*

erred in including Question 5 on the verdict slip. R.R. at 5417a-18a. Specifically,

New Morgan averred that including Question 5 on the verdict slip

> suggested to the jury that there were two separate and distinct fact
> questions before it, when in reality the answer to the only question
> properly before the jury (when the Agreement terminated) was, as a
> matter of law, the same answer to the separate question the [Trial] Court
> improperly allowed (when the contractual obligation to pay host fees
> terminated).

*Id.* at 5419a. The Trial Court denied New Morgan's Post-Trial Motion by Order

dated October 30, 2019, without a written decision.

On November 11, 2019, Defendants filed with the Trial Court a Motion to

Enter Declaratory Judgment Consistent with the Jury Verdict (Motion for

Declaratory Judgment). After oral argument by the parties, on January 9, 2020, the

Trial Court entered an Order granting in part and denying in part the Motion for

Declaratory Judgment and entering final judgment in the case. The January 9, 2020

Order stated:

> 1. For purposes of this declaratory judgment and the [j]ury
> [v]erdict, the contract between New Morgan and Defendants consisted
> of the following documents: the [1989 DSA], as amended by the [1990]
> Stipulation, the Correction to Stipulation of Settlement and Order dated
> October 29, 1990, the [1994 Stipulated Order], the April 1, 2003 letter
> agreement, and the October 28, 2013 letter agreement.
>
> 2. Defendants did not breach the written contract between New
> Morgan and Defendants in 2014 by adopting the 2014 . . . Plan as an
> open plan[,] and Defendants did not breach an obligation to designate
> the Conestoga Landfill in the 2014 . . . Plan.
>
> 3. Given that absence of breach, New Morgan did not validly or
> effectively terminate the written contract between New Morgan and
> Defendants on September 16, 2016, and New Morgan remained

contractually obligated to pay host fees to the County under the written contract between New Morgan and Defendants.

4. The written contract between New Morgan and Defendants terminated on February 13, 2019; however, New Morgan's contractual obligation to pay host fees to the County did not also terminate on February 13, 2019.

5. Defendants are not required to return to New Morgan any host fees that New Morgan previously paid under the written contract between New Morgan and Defendants.

Trial Ct. Order, 1/9/20, at 1-2 (internal citations omitted).

New Morgan did not file a second post-trial motion after the Trial Court's January 9, 2020 Order. Instead, it filed a Notice of Appeal on January 31, 2020, and a Pa. R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal on February 25, 2020.

In its Pa. R.A.P. 1925(a) Opinion, the Trial Court explained its reasons for denying New Morgan's Post-Trial Motion as follows:

[New Morgan] . . . suggest[s] that the duration of the host fee obligation is a legal question not properly put to the jury and therefore, the jury's determination on this pivotal issue should be disregarded by this Court, with an award inapposite to the jury's verdict entered in favor of [New Morgan]. Without regurgitating the lengthy record or offering a tiresome and unnecessarily detailed procedural history, *there is more than substantial evidence to support the jury's verdict on the life of the host fee obligation. Neither the [1989] DSA nor any subsequent writing relating to the host fee obligation contained any provision setting forth a date upon which the host fee obligation was to terminate.* Quite to the contrary, the 1994 Stipulat[ed Order] . . . specifically provided that [New Morgan] was to pay a host fee on out-of-county generated waste disposed of at [Conestoga Landfill] in continued accordance with the schedule set forth in the [1989] DSA. *Defendants introduced testimony supporting their position that the host fees were to be paid for the life of [Conestoga Landfill]. [New Morgan] offered no testimony to counter Defendants' evidence.* [New Morgan]

14

argues that the host fee obligation automatically terminated by application of contract law concurrently with termination of the [c]ontract, and all evidence to the contrary, including [New Morgan's] representation on a DEP permit application contradicting [its] position that host fees were to terminate with the other contractual obligations, was improperly admitted and should not have been considered by the jury. Despite [New Morgan's] argument to the contrary, *just because Defendants were not permitted to pursue a regulatory estoppel theory*[12] *does not entirely vitiate the evidentiary value of a party opponent's representations to DEP concerning its host fee obligation.*

Trial Ct. Op., 3/16/20, at 4-5 (emphasis added).[13]

On June 3, 2020, Defendants filed with this Court an Application to Quash the appeal, arguing that New Morgan was required to file a second post-trial motion following the Trial Court's January 9, 2020 entry of the declaratory judgment. New Morgan filed an Answer to the Application to Quash on June 17, 2020, asserting that it was not required to file a second post-trial motion to preserve its issue for appeal and that it properly preserved its issues by filing a timely Post-Trial Motion within 10 days of the jury's verdict.

By Order dated June 24, 2020, this Court listed the Application to Quash with the merits of the appeal.

---

[12] Defendants had initially argued a regulatory estoppel theory, asserting that New Morgan was estopped from claiming that its host fee obligation terminated with the contract because it took a contrary position in prior communications with DEP. The Trial Court permitted Defendants to introduce evidence regarding New Morgan's prior statements at trial, over New Morgan's objections. Subsequently, at the charging conference, the Trial Court determined that the jury would *not* be charged on regulatory estoppel. New Morgan asked the Trial Court to instruct the jury to disregard all of Defendants' evidence regarding New Morgan's prior representations about its host fee obligation, but the Trial Court declined to do so, finding that the duration of New Morgan's host fee obligation was a proper factual question for the jury.

[13] This Court's review of an order denying a post-trial motion for a judgment notwithstanding the verdict is limited to determining whether the trial court abused its discretion or committed an error of law. *Primiano v. City of Phila.*, 739 A.2d 1172, 1173 n.1 (Pa. Cmwlth. 1999).

15

## Analysis

## 1. Application to Quash

Preliminarily, we must address Defendants' Application to Quash, as the arguments therein implicate this Court's jurisdiction to hear the appeal.

Defendants contend that because New Morgan did not file a post-trial motion after the Trial Court's entry of the declaratory judgment, this Court lacks jurisdiction to consider the merits of the appeal. Defendants assert that because New Morgan's appellate issues relate solely to the Trial Court's declaratory judgment, and New Morgan did not file a post-trial motion after the entry of the declaratory judgment, New Morgan did not preserve any issues for this Court's review. In response, New Morgan contends that it was not required to file a second post-trial motion to preserve its issue for appeal and that it properly preserved its appellate issues by filing a timely Post-Trial Motion after the jury's verdict, as required by Pa.R.Civ.P. 227.1. This procedural issue appears to be one of first impression under the facts of this case.

Pa.R.Civ.P. 227.1 sets forth the requirements for seeking post-trial relief following a trial. Rule 227.1 states in pertinent part:

(b) . . . [P]ost-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or *by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial*; and

(2) *are specified in the motion*. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

16

(c) Post-trial motions *shall be filed within ten days after*

> (1) *verdict*, discharge of the jury because of inability to agree, or nonsuit *in the case of a jury trial*; or

> (2) notice of nonsuit or the filing of the decision in the case of a trial without a jury.

Pa.R.Civ.P. 227.1(b) and (c) (emphasis added). Post-trial motions are not required, however, following a court proceeding that does not constitute a "trial." *G & G Invs., LLC v. Phillips Simmons Real Est. Holdings, LLC*, 183 A.3d 472, 477 (Pa. Super. 2018).

In support of their Application to Quash, Defendants rely extensively on *Motorists Mutual Insurance Company v. Pinkerton*, 830 A.2d 958 (Pa. 2003), in which the Pennsylvania Supreme Court clarified the proper post-trial motion procedure in declaratory judgment actions. The *Pinkerton* Court held that "*where a trial court enters a declaratory order following a trial, parties must file post-trial motions from that order*, as they would in any other civil proceeding, before the order may be deemed a final order for purposes of an appeal." *Id.* at 963 (emphasis added).

In so holding, the Supreme Court emphasized that the post-trial motion requirements of Rule 227.1 apply equally in matters both at law and in equity. The Supreme Court concluded:

> [The a]ppellants are correct that *the Superior Court erred in quashing their appeals based on the fact that they had filed post-trial motions instead of immediate appeals from the trial court's declaratory judgment orders*. In each of the cases in this consolidated appeal, the trial court order from which appeal was taken was an adjudication of the parties' rights following a trial. Although [two of the appeals] involved non-jury trials, whereas [the other two appeals] involved jury trials, *this distinction is irrelevant under Rule 227.1, which*

17

*unequivocally mandates the filing of post-trial motions after either a jury or non-jury trial.* Moreover, although the parties in [one appeal] submitted their case to the [trial] court on stipulated facts pursuant to [Pa.R.Civ.P.] 1038.1, the Explanatory Comment to the Rule could not be more clear that the procedure in such trials "follows an existing model, that of a nonjury trial with respect to the decision, post-trial practice and appeal." [Pa.R.Civ.P.] 1038.1 (Explanatory Comment-1996). As such, *orders following trials on stipulated facts must be treated just like orders following other trials, i.e., in both situations, parties who wish to appeal must first file post-trial motions.*

*Id.* at 963-64 (footnotes omitted) (emphasis added). Thus, the Supreme Court declared that "*post-trial declaratory judgment orders, just like other post-trial orders, are subject to the post-trial motion procedures in Rule 227.1.*" *Id.* at 964 (emphasis added); *see Mun. Auth. of Hazle Twp. v. Lagana*, 848 A.2d 1089, 1092 (Pa. Cmwlth. 2004) ("[O]ur [S]upreme [C]ourt requires the filing of post-trial motions under Pa.[R.Civ.P.] 227.1 in declaratory judgment actions.").

While the *Pinkerton* Court's pronouncement regarding post-trial procedure in declaratory judgment actions is clear, its application to this case is not. Unlike the consolidated cases in *Pinkerton*, this case was not exclusively a declaratory judgment action; it was a "hybrid" action involving both breach of contract and declaratory judgment claims. After the jury reached its verdict on the contract claims and the Trial Court denied New Morgan's timely filed Post-Trial Motion, Defendants asked the Trial Court to enter a declaratory judgment consistent with the jury's verdict. *See* R.R. at 5469a. Consequently, this case is factually distinguishable from *Pinkerton*.[14]

---

[14] For this reason, we also conclude that the post-*Pinkerton* declaratory judgment cases on which Defendants rely are inapposite, because in each of those cases, the appellant *did not file a post-trial motion* before appealing. *See, e.g.*, *Cellucci v. Laurel Homeowners Ass'n* (Pa. Cmwlth., No. 1094 C.D. 2018, filed July 18, 2019), slip op. at 7 (noting that the appellants "did not file a post-trial motion" at the trial court level); *Coal Tubin' PA, LLC v. Cambria Cnty. Transit Auth.*, **(Footnote continued on next page…)**

18

Our Supreme Court has stated that "to warrant the heavy consequence of waiver, . . . the applicability of [Rule 227.1] should be apparent upon its face or, failing that, in clear decisional law construing the Rule." *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkts., Inc.*, 52 A.3d 1233, 1247 (Pa. 2012). Rule 227.1 is silent as to whether it applies when the appellant files a timely post-trial motion following a jury verdict, but does not file a post-trial motion after the subsequent entry of a declaratory judgment reflecting that verdict. We have also found no case law addressing this particular question.

*Newman* is instructive in this situation, since the applicability of Rule 227.1 is not readily apparent from the rule itself or our case law. In *Newman*, the Supreme Court considered whether the appellant was required to file post-trial motions following a trial court proceeding on remand from an appellate court, a situation not contemplated by Rule 227.1 at that time. Specifically, the *Newman* Court was faced with the question of whether Rule 227.1 applies "where an appellant files post-trial motions after the trial court's original verdict, but not to a later order resulting from a remand proceeding where no new evidence was taken." *Newman*, 52 A.3d at 1245.

In determining whether the remand proceeding in that case constituted a "trial" for purposes of Rule 227.1, the Supreme Court observed that findings of fact and an evidentiary hearing are the "hallmarks" of a trial, placing counsel on notice of the need to file post-trial motions. *See id.* at 1240-45. Thus, the *Newman* Court held that "a remand proceeding[,] such as the one here, that *relies on an existing record*, is not a trial—even if the trial court draws different conclusions from that

162 A.3d 549, 553 (Pa. Cmwlth. 2017) (noting that the appellant "did not file post-trial motions"); *Gibraltar Rock, Inc. v. New Hanover Twp.*, 118 A.3d 461, 465 (Pa. Cmwlth. 2015) (noting that the appellant "failed to file a post-trial motion before the trial court"); *Lagana*, 848 A.2d at 1091 (concluding that the appellant "failed to preserve any issues by filing a motion for post-trial relief" in the trial court).

record to comport with an appellate court's directive." *Id.* at 1251 (emphasis added);[15] *see also City of Phila. v. New Life Evangelistic Church*, 114 A.3d 472, 478 (Pa. Cmwlth. 2015) ("[A] hearing that bears the hallmarks of a trial *by requiring or admitting, or as in this case, offering a party the opportunity to present additional evidence*, does constitute a 'trial' for the purposes of [Rule] 227.1.") (emphasis added), *overruled in part on other grounds*, *Wolk v. Sch. Dist. of Lower Merion*, 197 A.3d 730 (Pa. 2018); *G & G*, 183 A.3d at 477 (stating that a post-trial motion is required "following a proceeding[] where *the [trial] court heard new testimony and received new evidence, which the [trial] court relied upon when it issued its decision*") (emphasis added).

Applying these considerations to the instant case, we conclude, based on our review of the record, that the January 9, 2020 proceeding before the Trial Court was not a "trial" so as to trigger the requirements of Rule 227.1. Although, unlike *Newman*, this case did not involve a remand, the Trial Court's January 9, 2020 Order entering the declaratory judgment was based on the existing record – i.e., the jury's verdict.

At the January 9, 2020 proceeding, the following exchange occurred:

> [DEFENDANTS' COUNSEL]: The way I read the Rules [of Civil Procedure] and the law is that – I mean normally what we would do is take the jury verdict praecipe to the Prothonotary to enter judgment on

---

[15] Following its decision in *Newman*, the Supreme Court amended Rule 227.1 to specifically address post-trial procedure after a remand from an appellate court. Rule 227.1(i) now provides that a motion for post-trial relief following the resolution of matters remanded by an appellate court is not required unless: (1) the appellate court has specified that the remand is for a complete or partial new trial; or (2) the trial court states in its order resolving the remanded issue that a motion for post-trial relief is required to preserve those issues for appellate review. Pa.R.Civ.P. 227.1(i).

20

the verdict. But for declaratory relief, [Pa.R.Civ.P.] 1602[16] in the comment says that it's the [Trial] Court's function to enter the declaratory relief.

THE COURT: When you say it's the [Trial] Court's function to enter the declaratory relief, *I'd be entering declaratory relief that echoes what the [jury] verdict says.*

[DEFENDANTS' COUNSEL]: *Correct.*

. . . .

THE COURT: So you want the declaratory judgment cause [of action] to be finally ruled upon *in accordance with the jury verdict?*

[DEFENDANTS' COUNSEL]: *Correct*, Your Honor.

Notes of Testimony (N.T.), 1/9/20, at 3-4 (emphasis added); *see id.* at 15 (Defendants' counsel further stated, "We're not asking the [Trial] Court to retry things or to re-decide things, just to enter the judgment that naturally flows from the jury's findings."). New Morgan's counsel agreed that, at that time, "it would be appropriate for [the Trial Court] to enter *a final order reflecting the declaratory judgments*." *Id.* at 4 (emphasis added).

---

[16] Pa.R.Civ.P. 1602 provides: "In any civil action, a party may include in the claim for relief a prayer for declaratory relief and the practice and procedure shall follow, as nearly as may be, the rules governing that action." The Explanatory Comment to Rule 1602 states:

[I]f declaratory relief is sought as part of an action at law for damages, and the trial is by jury, it would be inappropriate for the form and nature of the declaratory relief to be the province of the jury. *In such a case the jury should decide all questions of fact and money damages with special findings of fact where required but the [trial] court should frame the declaratory relief.* Also, some flexibility in procedure may be needed if the demand for declaratory relief is included in a counterclaim.

*Id.*, Explanatory Cmt. (1979) (emphasis added).

21

Following this discussion, the Trial Court heard argument from both parties' counsel relating to the Motion for Declaratory Judgment. The parties' arguments related primarily to the precise wording the Trial Court should use in its declaratory judgment order. *See id.* at 4-18. Importantly, the Trial Court did not receive any additional testimony or evidence during this proceeding.

Under these circumstances, we conclude that the January 9, 2020 proceeding did not bear the hallmarks of a trial, and, therefore, New Morgan was not required to file a second post-trial motion after the Trial Court's entry of the January 9, 2020 Order to preserve its issues for appeal. *See G & G*, 183 A.3d at 477; *see also Vautar v. First Nat'l Bank of Pa.*, 133 A.3d 6, 11-12 (Pa. Super. 2016) (*en banc*) (concluding that where the parties presented no new testimony and introduced no evidence, and where the trial court issued a verdict based solely on its evaluation of the existing record, the proceedings did not amount to trial, and, thus, post-trial motions were not required). Consequently, we conclude that New Morgan properly filed a timely Post-Trial Motion after entry of the jury's verdict, as required by Pa.R.Civ.P. 227.1(c), wherein it raised the same issues it raises on appeal. *See* R.R. at 5417a-32a.

Accordingly, we deny Defendants' Application to Quash and will proceed to the merits of the appeal.

### 2. Jury Verdict Slip

On appeal, New Morgan raises numerous issues stemming from Question 5 on the verdict slip, which pertained to the duration of its contractual obligation to pay host fees to the County. Question 5 asked the jury: "Do you find that [New Morgan's] obligation to pay host fees also terminated on February 13, 2019?" New Morgan Br., App. A. The jury answered "No" to that question. *Id.* Consistent with

22

the jury's findings, the Trial Court's declaratory judgment stated: "The written contract between New Morgan and Defendants terminated on February 13, 2019; however, New Morgan's contractual obligation to pay host fees to the County did not also terminate on February 13, 2019." Trial Ct. Order, 1/9/20, at 2.

In its appellate brief, New Morgan asserts that the Trial Court erred in including Question 5 on the verdict slip because the term of its obligation to pay host fees was a question of law for the Trial Court, not a factual question for the jury. New Morgan also asserts that the jury's affirmative answer to Question 4 – finding that the parties' contract terminated on February 13, 2019 – necessarily required an affirmative answer to Question 5. In essence, New Morgan contends that the jury's finding that the parties' contract terminated on February 13, 2019 is legally inconsistent with its finding that New Morgan's obligation to pay host fees did not also terminate on that date.

In response, Defendants assert that New Morgan waived its present challenges to Question 5 and the alleged inconsistency of the verdict because: (1) New Morgan never asserted that the term of its host fee obligation was a question of law for the Trial Court, rather than a question of fact for the jury, until the filing of its Post-Trial Motion; (2) after extensive negotiations with Defendants, New Morgan agreed to the inclusion of Question 5 on the verdict slip and to the question's wording; (3) New Morgan requested the clarifying instruction on Question 5 that the Trial Court gave to the jury; and (4) New Morgan did not object to the jury's allegedly inconsistent verdict at the time it was rendered.

Before we consider whether New Morgan has waived its challenges to Question 5, we will summarize the key portions of the trial record relevant to this question.

23

### a. Trial Proceedings

Both parties submitted proposed verdict slips and jury instructions to the Trial Court before the conclusion of trial. New Morgan's proposed verdict slip did not include a question regarding its obligation to pay host fees; Defendants' proposed verdict slip did. *See* R.R. at 3401a, 3702a-08a.

The parties' on-the-record discussions regarding the content of the verdict slip that would be given to the jury comprises 73 pages of transcript. *See id.* at 3396a-3459a, 3478a-88a. During its verdict slip negotiations with defense counsel, New Morgan originally proposed that Questions 4 and 5 be combined into one question, *id.* at 3441a-42a,[17] and objected to including a separate question about its host fee obligation on the ground that Defendants had withdrawn their declaratory judgment counterclaim before trial, *id.* at 3445a; *see id.* at 3402a-03a. The Trial Court rejected New Morgan's contention, stating: "Just because [Defendants] withdrew the[ir] counterclaim doesn't mean they cannot defend against your claim that the [obligation to pay host fees] terminated with the termination of the contract." *Id.* at 3445a.

New Morgan maintained that because Defendants withdrew their counterclaim, "the only claim left in the case" was its request for a "declaratory judgment that the contract between the parties terminated on February 13, 2019." *Id.* at 3403a. The Trial Court disagreed, stating:

> [T]o suggest that it's as simple as saying the contract terminated and there's no way to interpret th[e] Agreement to mean that there was an ongoing obligation to pay host fees surviving the termination date of the contract.

---

[17] New Morgan proposed that the combined question read, "Do you find that the written contract terminated on February 3, 2019, including the obligation to pay host fees?" R.R. at 3442a.

. . . [T]here were so many different presentations as to the commencement date and the termination dates and whether it was 2021 or 2019 or the life of the landfill with respect to some items. It's all over the place. There are representations in the bond documents that contradict representations in other documents and other correspondence that's been introduced. So to suggest that this is very clear and . . . that's the only way to state it really disingenuous.

The jury has to make a determination here as to whether or not these contracts oblige your client, [New Morgan], to pay the host fees so long as waste is accepted at the landfill.

*Id.* at 3403a-04a.

Later, after observing that the parties had "been at it for hours," the Trial Court directed counsel to come to a final agreement on the verdict slip questions:

I'm going to give you guys 15 minutes to come up with a written version [of the verdict slip] you agree to, that's it. I'm taking a 15-minute break because I'm not doing this anymore. This is ridiculous, honestly. . . . This is why I asked you to sit down together. I just want [both parties' counsel to] just sit down together, come to an agreement. Then you can talk to your co-counsel, but just the two of you sit down and please come to an agreement as to the order and wording of these questions [for the jury].

*Id.* at 3456a, 3459a. Following a recess, and after further on-the-record discussion between counsel and the Trial Court, the parties agreed to the five questions that appeared on the verdict slip. *Id.* at 3482a, 3484a-85a. Indeed, the Trial Court later remarked that "seven lawyers" had agreed to the questions on the verdict slip. *Id.* at 3687a.

Although they had reached an agreement, both parties noted their objections to the Trial Court not using their proposed jury instructions and verdict slips. *Id.* at

3487a-88a.[18]  The Trial Court explained why it did not accept the parties' proposed submissions, as follows:

> You both gave me jury instructions.  You both gave me verdict slips. And the verdict slips . . . you each gave me constituted argument.  You wanted argument and statements of fact to go back to the jury [under] the guise of verdict slip questions, and I declined to do that.  So what I've asked for are questions that synthesize the issues that need to be put to the jury for resolution.

*Id.* at 3487a-88a; *see id.* at 3440a-41a (directing counsel that "the verdict slip should be simple, not a closing argument[] and so planted with facts that they're suggest[ing] to [the jury] that they are to assume [those facts] are true").

At one point during its deliberations, the jury asked to see two DEP documents that had been entered into evidence and the parties' 1990 Stipulation.  New Morgan's counsel argued to the Trial Court that based on the jury's request for the DEP documents, she believed the jury was "confused" by Question 5 and requested that a clarifying instruction be given.  *Id.* at 3685a-86a.  New Morgan's counsel stated:

> [I]t appears [the jury] might need clarification on Question No. 5. Because what it says is, Do you find that [New Morgan's] obligation to pay host fees also terminated on February 13, 2019?  *I think we need to clarify [that question] to say, Do you find that [New Morgan's] contractual obligation*, so they're not thinking this means our [host fee] obligation under our DEP permit.
>
> . . . .
>
> . . . *I think that all parties agreed when we agreed on Question . . . 5 that we were talking about the contractual obligation.*  So I don't see any harm in letting the jury know that this is [New Morgan's]

---

[18] New Morgan's counsel stated: "[O]ur compromise with respect to the verdict slip does not represent a waiver of our objections to the [Trial] Court not adopting New Morgan's verdict slip."  R.R. at 3488a.

contractual obligation. *That's what we all agreed [Question 5] was intended to be asking. . . .*

*Id.* at 3685a (emphasis added).

When defense counsel objected, New Morgan's counsel further pressed the Trial Court for a clarifying instruction with regard to Question 5:

[NEW MORGAN'S COUNSEL]: . . . *I see zero harm to conforming the verdict slip to the understanding of the parties that [New Morgan's] obligation is contractual.* And there is a lot of potential harm if, in fact, the jury is confused and think[s] that [the question] relates to [the] DEP permit. And *if they answer no to Question 5, then we have an absolute clear appellate issue that could totally be done away with by just adding the word contractual. . . . This can be addressed with one word and there will be no issue.*

. . . .

[NEW MORGAN'S COUNSEL]: We heard no response from [Defendants'] counsel that his client[s] would be prejudiced by clarifying what the parties agreed to by adding the word contractual. *I don't want to see there be appellate issues here. I don't want to appeal this if we don't have to.* That's the concern, because we're not going to know what their basis was under [Question] 5 if they answer yes to that. We're going to be left with the question, did they think it was a permit or did they think it was a contract? . . . .

THE COURT: . . . *So you would have me write, Question No. 5 pertains to the contractual obligation only?*

[NEW MORGAN'S COUNSEL]: *Yes.*

. . . .

THE COURT: I'll use applies instead of pertains. *Applies to the contractual obligation to pay host fees. That's what you want to go back [to the jury]?*

[NEW MORGAN'S COUNSEL]: *Yes.*

27

THE COURT [(asking Defendants' counsel)]: How does that prejudice you if that [clarification] goes back [to the jury]? That just clarifies the question that we agreed what it meant. . . . The question is whether or not the contractual obligation to pay host fees to the County pursuant to the contracts with the County continues. . . .

. . . .

THE COURT:. . . . I can't see how it harms [anyone] to send a simple clarification that comports with everybody's understanding of [Question 5].

*Id.* at 3691a-93a (emphasis added); *see id.* at 3689a. The Trial Court granted New Morgan's request, over defense counsel's objection, and sent the requested clarification to the jury. *Id.* at 3692a-93a.

Thereafter, the jury requested further clarification regarding Question 5. New Morgan's counsel asked the Trial Court to re-instruct the jury that New Morgan's obligation to pay host fees stemmed from the parties' contract, not from the DEP permit. However, the Trial Court declined to issue a repetitive instruction, stating:

I'm not going to further confuse this issue. . . . This is not a time to start sending verbose messages to the jury. *They were properly instructed. We sent back a verdict slip that everybody agreed to*.

*Id.* at 3695a (emphasis added). The Trial Court informed the jury that no further clarification was necessary.

After further deliberations, the jury returned its verdict, the foreperson recited the jury's answer to each question on the verdict slip, and the Trial Court polled the jury. At no time after the verdict was read did New Morgan object to the verdict. *See id.* at 3699a-3701a. After excusing the jury and recording the verdict, the Trial Court asked New Morgan's counsel if there was anything he wished to address at that time, to which he replied, "No." *Id.* at 3700a-01a.

28

## b. Waiver

On appeal, New Morgan asserts that the Trial Court erred in including Question 5 on the verdict slip, because the duration of New Morgan's obligation to pay host fees was a question of law for the Trial Court, not a factual question for the jury. New Morgan contends that "[t]he [T]rial [C]ourt . . . insisted that the termination of the host fee obligation was 'a question of fact for the jury' as opposed to a question of law. *That determination is the crux of the issue on appeal*." New Morgan Reply Br. at 19 (emphasis added). New Morgan asserted in its Post-Trial Motion that giving Question 5 to the jury "resulted in the jury being misled into finding that New Morgan's contractual obligation to pay host fees did not terminate on February 13, 2019, a question that[] . . . the jury should not have been asked at all." R.R. at 5414a. We agree with Defendants that New Morgan has waived its present challenges to Question 5.[19]

In order to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 45 (Pa. 2011); *see Takes v. Metro. Edison Co.*, 695 A.2d 397, 400 (Pa. 1997) (stating that to preserve an objection for appellate review, "trial counsel is required to make a timely, specific objection during trial"). Issues that are not preserved by specific objection in the trial court are waived on appeal. Pa. R.A.P. 302(a).

Our Supreme Court has explained waiver in the context of post-trial motions as follows: "[Pa.R.Civ.P.] 227.1, which governs post-trial relief, provides in relevant part that *a ground* may not serve as the basis for post-trial relief, *including a judgment [notwithstanding the verdict], unless it was raised in pre-trial*

---

[19] The issue of whether New Morgan has waived issues for appeal is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Straub v. Cherne Indus.*, 880 A.2d 561, 566 n.7 (Pa. 2005).

29

*proceedings or at trial.*"  *Straub*, 880 A.2d at 566.  "Rule 227.1 further notes that error that could have been corrected by timely objection in the trial court may not constitute a ground for such a judgment."  *Id.*; *see Keffer v. Bob Nolan's Auto Serv., Inc.,* 59 A.3d 621, 630 (Pa. Super. 2012) (stating that a party "may not, at the post-trial motion stage, raise a new theory which was not raised during trial").

At trial, New Morgan did not specifically object to the inclusion of Question 5 on the verdict slip for the reason it now asserts – that the determination of the term of its host fee obligation was a question of law for the Trial Court, not a question of fact for the jury.  The basis for New Morgan's initial objection to asking the jury about its host fee obligation was that Defendants had withdrawn their counterclaim.  R.R. at 3445a.  In response to New Morgan's objection, the Trial Court ruled that, in light of the conflicting evidence on the host fee issue presented at trial, the duration of New Morgan's host fee obligation was a proper factual question for the jury.  *Id.*; *see id.* at 3403a-04a.

Moreover, contrary to New Morgan's assertion at trial, the issue of the duration of New Morgan's host fee obligation was not confined to Defendants' withdrawn counterclaim.  In the breach of contract count of New Morgan's Third Amended Complaint, New Morgan sought a declaration that its obligation to pay host fees terminated with the contract.  *See* Third Am. Compl. at 41 (seeking "[a] declaratory judgment finding that [New Morgan] no longer has any obligation to pay host fees to the Defendants").  Defendants disputed that averment, *see* Answer to Third Am. Compl. ¶¶ 3, 63-64, 66, and both parties presented evidence to support their respective positions at trial.  The Explanatory Comment to Pa.R.Civ.P. 1602 explicitly provides that "[if] declaratory relief is sought as part of an action at law . . . , *the jury should decide all questions of fact* . . . with special findings of fact where

30

required[,] but the court should frame the declaratory relief." Pa.R.Civ.P. 1602, Explanatory Cmt. (1975); *see also* 42 Pa. C.S. § 7539(b) (stating that when a declaratory judgment proceeding "involves the determination of an issue of fact, *such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions* in the court in which the proceeding is pending") (emphasis added).

Subsequently, at the close of the evidence, New Morgan moved for a directed verdict in its favor. In its appellate brief, New Morgan contends that it asked the Trial Court to enter a directed verdict that "the plain language of the Agreement showed that the *legal effect* of the Agreement's termination *was to terminate New Morgan's obligation to pay contractual host fees*." New Morgan Br. at 13 (emphasis added); *see id.* at 37 ("New Morgan moved at the close of all evidence for a directed verdict both as to the termination of the contract, *and to its legal effect—the termination of its contractual obligation to pay host fees*.") (emphasis added). The record, however, belies this assertion. During the presentation of its oral Motion for Directed Verdict, New Morgan specifically requested a "directed verdict *on one issue and one claim*, and that is *our claim that the contract between the parties terminated as agreed on February 13, 2019*." R.R. at 3589a (emphasis added). New Morgan *did not* request a directed verdict as to the legal effect of the contract's termination, nor did it ask for a directed verdict that its obligation to pay host fees terminated on the same date as the contract. *See id.* at 3589a-91a.

The first time New Morgan asserted that the duration of its host fee obligation was a question of law for the Trial Court was in its Post-Trial Motion.[20] In its Post-

---

[20] Notably, when discussing the host fee issue during the charging conference, the Trial Court specifically asked New Morgan's counsel, "Just assuming we limit the consideration to your **(Footnote continued on next page…)**

31

Trial Motion, New Morgan averred that including Question 5 on the verdict slip "suggested to the jury that there were two separate and distinct fact issues before it, when in reality the answer to the only question properly before the jury (when the Agreement terminated) was, *as a matter of law*, the same answer to the separate question the [Trial] Court improperly allowed (when the contractual obligation to pay host fees terminated)." *Id.* at 5419a (emphasis added). As demonstrated above, however, New Morgan did not specifically object to Question 5 on this basis at trial.[21]

Furthermore, as demonstrated in our recitation of the trial proceedings above, the parties engaged in extensive negotiations, both on and off the record, about the precise questions to be sent to the jury, as well as their wording, which resulted in an agreed-upon verdict slip. During deliberations, when the jury asked to see three trial exhibits, New Morgan requested that the Trial Court give a clarifying instruction on Question 5, which the Trial Court granted. R.R. at 3683a. New Morgan requested the clarifying instruction even though the jury had not asked for clarification. When the Trial Court initially expressed reluctance, New Morgan asserted that without a clarifying instruction, "that would be, quite frankly, reversible

---

surviving claim as to whether or not the host fee obligation terminated, *are you saying that's not the province of the jury*?" R.R. at 3405a (emphasis added). New Morgan's counsel replied, "I would need to consult [my co-counsel]." *Id.* New Morgan's counsel, however, did not answer this question, stating only that "at the end of the day[,] . . . the[] contracts are plain on their face and can be enforced as written." *Id.* at 3406a.

[21] In its brief, New Morgan claims that it "repeatedly insisted that the jury should not be asked the question [about its host fee obligation], *because it was a question of law for the court*." New Morgan Br. at 38 (citing R.R. at 3445a) (emphasis added). However, that objection does not appear on the transcript page cited. The only remark from New Morgan's counsel that appears there is his objection to asking the host fee question on the ground that Defendants had withdrawn their counterclaim. *See* R.R. at 3445a ("*That was their counterclaim they withdrew*[] . . . that we're obligated to pay host fees for the life of the facility.") (emphasis added).

32

error in this case." *Id.* at 3689a. New Morgan's counsel argued that "the jury [was] confused" and that if the jury answered Question 5 without a clarifying instruction, "then we [would] have an absolute clear appellate issue *that could be totally done away with by just adding the word contractual*." *Id.* at 3691a (emphasis added). New Morgan's counsel then stated, "I don't want to see there be appellate issues here. I don't want to appeal this if we don't have to. That's the concern, because we're not going to know what [the jury's] basis was under [Question] 5 if they answer yes to that." *Id.* at 3691a-92a. The Trial Court granted New Morgan's request and, with New Morgan's approval, instructed the jury that "Question No. 5 [applies] to the contractual obligation only[]." *Id.* at 3692a.

In *Commonwealth v. Hewlett*, 189 A.3d 1004, 1010 (Pa. Super. 2018),[22] the defendant initially objected to the Commonwealth's request to present certain evidence at his trial. At the trial court's request, the defendant agreed to admission of the evidence and provided the trial court with a draft curative jury instruction, which the trial court adopted and gave to the jury verbatim. *Id.* On appeal, the defendant challenged the trial court's admission of that evidence. The Superior Court concluded: *"[The defendant] acquiesced to the trial court's ruling and complied with its instruction to furnish it with a curative instruction*. Therefore, he has waived any challenge to the court's ruling." *Id.* (emphasis added); *see Com. v. Hallowell*, 439 A.2d 1140, 1141 (Pa. 1981) (stating that a litigant who seeks and receives specific relief for a given error cannot seek additional relief at a later time); *Com. v. Einhorn*, 911 A.2d 960, 976 (Pa. Super. 2006) (after the appellant's counsel expressed concern about the trial court's comment during the jury charge, the trial

---

[22] Although such decisions are not binding, this Court may cite Superior Court decisions as persuasive authority. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

court offered to give a supplemental instruction to the jury, to which counsel agreed; thus, the Superior Court held that "[b]ecause no further relief was requested by [the appellant], he may not now complain of the trial court's error in instructing the jury"); *see also Com. v. Laird*, 988 A.2d 618, 629 (Pa. 2010) (finding an appellate issue regarding the propriety of a jury instruction waived where the "[a]ppellant specifically requested that the [trial] court instruct the jury in the precise manner that he now challenges").

Here, while New Morgan initially objected to asking the jury about the duration of its host fee obligation, after negotiations, it agreed to include Question 5 on the verdict slip, and then specifically requested a clarifying instruction on that question to "avoid" any appellate issues, which the Trial Court gave to the jury. Our Supreme Court has recognized:

> If, toward the close of the protracted trial, the course proposed and, in fact, pursued by the learned trial judge was deemed objectionable either by plaintiff or defendant, such objection should have been promptly asserted; *without objection, it must be understood, and the trial judge was warranted in understanding, that each side acquiesced in what was being done and waived possible objection*[] . . . .

*Snaman v. Donahoe's, Inc.*, 161 A. 68, 69 (Pa. 1932) (emphasis added); *see Jones v. Ott*, 191 A.3d 782, 792 (Pa. 2018) (holding that even if the appellant had preserved her jury charge issue in the first instance, her subsequent statement on the record that she no longer had any issues with the charge waived any available post-trial claim).

Under these circumstances, we conclude that by failing to specifically object to Question 5 on the basis it now asserts, agreeing to the inclusion and wording of Question 5 on the verdict slip, and subsequently requesting a clarifying instruction on Question 5 that the Trial Court gave verbatim to the jury – which, in New

Morgan's counsel's words, would "totally do[] away with" any "appellate issues" – New Morgan has waived its present challenges to Question 5.

New Morgan also asserts that the jury's finding that the parties' agreement terminated on February 13, 2019, necessarily required a finding that New Morgan's host fee obligation terminated on the same date. In essence, New Morgan asserts that the jury's answers to Questions 4 and 5 were legally inconsistent. *See* R.R. at 5417a ("[T]he jury's verdict that New Morgan's contractual obligation to pay host fees did not terminate on February 13, 2019, at the same time the overall Agreement terminated, was erroneous as a matter of law."); New Morgan Br., App. D, at 2-3 (averring that Question 5 "confused the jury . . . as to the question being asked" and that the Trial Court gave "improper deference to the jury's resolution of a question that is apparent as a matter of law from the text of the parties' agreement"). We conclude that, under well-established precedent, New Morgan has waived its challenge to the jury's allegedly inconsistent verdict by failing to object at the time the verdict was rendered.

Our Court addressed this issue in *Chin v. New Flyer of America, Inc.*, 169 A.3d 689 (Pa. Cmwlth. 2017). *Chin* involved a products liability and negligence action filed by a pedestrian against New Flyer, the manufacturer of a bus that struck and injured him. The matter proceeded to a jury trial. The jury found that the bus that hit the pedestrian was not *defective* in its design or the adequacy of New Flyer's warnings, but the jury found that New Flyer was *negligent* in its design and/or failure to provide adequate warnings. *Id.* at 692. New Flyer did not lodge any objection following the announcement of the jury's verdict before the jury was discharged. *Id.* at 694.

On appeal, New Flyer asserted that the jury's finding that New Flyer was negligent was inconsistent with the jury's finding that there was no product defect. *Id.* In concluding that New Flyer had waived this claim for appellate review, this Court, after summarizing Pennsylvania Supreme Court precedent on the issue, explained:

> New Flyer focuses on the jury's finding "that the bus was not **defective** in either its design or the adequacy of New Flyer's warnings, but . . . the jury found that New Flyer was **negligent** in its design and/or failure to provide adequate warnings." *It argues that because there was no finding of a product defect, there cannot be a finding of negligence, either. It claims it was not required to object at the time the verdict was rendered, pointing out that the trial court had already re-instructed the jury on the topic of product defects and also polled the jury, which confirmed that the jury intended the inconsistent result it reached.* As a result, it contends that objecting once the verdict was read would have been futile because there was nothing the trial court could do to cure the error, short of directing the jury to change its verdict.
>
> However, . . . *our Supreme Court precedent makes clear that a party must contemporaneously object at the time a verdict is rendered, and before the jury is discharged, if it believes the verdict is inconsistent.*

*Id.* at 696-97 (italics added; bold in original) (internal citation omitted). Therefore, we held that "New Flyer's failure to object following the announcement of the verdict but before the jury was discharged resulted in its argument that the verdict was inconsistent being waived." *Id.* at 697; *see also Stapas v. Giant Eagle, Inc.*, 197 A.3d 244, 252 (Pa. 2018) (concluding that the appellant waived its challenge to the jury's inconsistent verdict by failing to object before the jury was dismissed, where the appellant's position was that "*the jury could not award damages for future lost wages as a matter of law*") (emphasis added); *Criswell v. King*, 834 A.2d 505, 513 (Pa. 2013) (reaffirming that "an inconsistent verdict provides grounds for objection

36

and, if a party seeks relief upon grounds of verdict inconsistency, *it must forward a timely, contemporaneous objection upon the rendering of the verdict*") (emphasis added); Pa.R.Civ.P. 227.1(b) ("[P]ost-trial relief may not be granted unless the grounds therefor . . . were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial.").[23]

Here, after the jury returned its verdict, the foreperson recited the jury's answer to each question on the verdict slip, and the Trial Court polled the jury. At no time after the verdict was read did New Morgan object to any alleged inconsistency in the jury's verdict. *See* R.R. at 3699a-3701a. After excusing the jury and recording the verdict, the Trial Court directly asked New Morgan's counsel if there was anything he wished to address, to which he replied, "No." *Id.* at 3700a-01a. Therefore, because New Morgan did not object to the jury's allegedly inconsistent verdict at the time it was rendered, we conclude that New Morgan has waived this claim. *See Criswell*, 834 A.2d at 513; *Chin*, 169 A.3d at 697.[24]

---

[23] Notwithstanding Pa.R.Civ.P. 227.1(b), our Supreme Court has held that a challenge to a jury verdict on the ground that it was against the weight of the evidence does not need to be raised at trial and before the jury is discharged to preserve the claim for appellate review. *Stapas*, 197 A.3d at 253. Rather, a weight of the evidence claim can be raised for the first time in a post-trial motion. *Id.* New Morgan, however, did not assert a weight of the evidence claim in its Post-Trial Motion.

[24] Our Court has stated:

The contention that one finding on a verdict sheet precludes the jury from making another finding that *the jury was expressly instructed that it could make* is *not a ground for judgment [notwithstanding the verdict]*, but rather is a claim of error in the verdict sheet that is *waived by failure to timely object to the inconsistent verdict*.

*Klipper Constr. Assocs., Inc. v. Warwick Twp. Water & Sewer Auth.* (Pa. Cmwlth., Nos. 471 & 792 C.D. 2014, filed Dec. 16, 2014), slip op. at 17 (emphasis added); *see* Cmwlth. Ct. Internal **(Footnote continued on next page…)**

Accordingly, we conclude that New Morgan has waived its challenges to Question 5 on the verdict slip and the alleged inconsistency of the jury's verdict.

### 3. Admissibility of Evidence

Finally, New Morgan challenges the Trial Court's admission of the testimony of four defense witnesses pertaining to the duration of New Morgan's host fee obligation, as well as the admission of documentary evidence New Morgan deems to be improper parol evidence.[25]   New Morgan Br. at 47-54; *see* R.R. at 5414a (averring in its Post-Trial Motion that the Trial Court "erred by allowing the jury to consider improper evidence related to the purported post-termination length of New Morgan's contractual obligation to pay host fees"); Trial Ct. Op., 1/9/20, at 5 (stating that New Morgan asserted in its Post-Trial Motion that "all evidence" supporting the jury's finding that its obligation to pay host fees did not terminate with the contract, "including [New Morgan's] representation on a DEP permit application contradicting [its] position that host fees were to terminate with the other contractual obligations, was improperly admitted and should not have been considered by the jury").

It is well established that "[j]udgment [notwithstanding the verdict] does not[] . . . lie for correction of errors in [the] admission or exclusion of evidence.  Such errors are properly the subject of a motion for new trial."  *Hoffmaster v. Cnty. of Allegheny*, 550 A.2d 1023, 1026-27 (Pa. Cmwlth. 1988); *see Greer v. Bryant*, 621 A.2d 999, 1003 (Pa. Super. 1993) (same).  Moreover, only the evidence received, *whether properly or erroneously admitted*, may be considered when ruling on a

---

Operating Procedure § 414(a), 210 Pa. Code § 69.414(a) (stating that an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value).

[25] New Morgan preserved these evidentiary claims by making timely objections at trial and by filing a Motion in Limine with the Trial Court to preclude this evidence.

motion for judgment notwithstanding the verdict. *Rosche v. McCoy*, 156 A.2d 307, 309 (Pa. 1960).

Here, in its Post-Trial Motion, New Morgan requested only a judgment notwithstanding the verdict; it did not request a new trial, nor did it seek a new trial in the alternative. *See* R.R. at 5434a. In fact, in its Reply Brief, New Morgan avows that it "is not asking for a new trial." New Morgan Reply Br. at 17; *see id.* at 12 (asserting that "what New Morgan seeks on this appeal" is "not[] . . . a[] new trial"). Whether the Trial Court correctly admitted the challenged evidence was not a proper basis for seeking judgment notwithstanding the verdict, as the Trial Court was required to consider all evidence presented at trial in deciding whether New Morgan was entitled to judgment as a matter of law. *See Rosche*, 156 A.2d at 309; *Carletti*, 190 A.3d at 776 n.4. Therefore, we conclude that the Trial Court properly denied New Morgan's Post-Trial Motion with regard to its evidentiary claims.[26]

## Conclusion

In denying New Morgan's Post-Trial Motion, the Trial Court determined that the evidence at trial supported the jury's verdict, including its finding that New Morgan's obligation to pay host fees to the County did not automatically terminate

---

[26] New Morgan also argues that, in entering the declaratory judgment, the Trial Court misapprehended the jury's factual findings. New Morgan asserts that "in its [O]pinion[,] the [T]rial [C]ourt changed [the jury's answers] to make the legal effect [of the contract's termination] seem less direct and obvious than it is under the [parties'] contract," when the Trial Court stated that New Morgan's obligation to pay host fees continued "for the life of the landfill." New Morgan Br. at 46-47. Regardless of the Trial Court's subsequent description of New Morgan's host fee obligation in its Pa. R.A.P. 1925(a) Opinion, its Order entering the declaratory judgment does not include the "life of the landfill" language that New Morgan opposes. The Order merely declares, consistent with the jury's verdict, that "[t]he written contract between New Morgan and Defendants terminated on February 13, 2019; however, New Morgan's contractual obligation to pay host fees to the County did not also terminate on February 13, 2019." Trial Ct. Order, 1/9/20, at 2. This declaration, which includes the word "contractual," is also consistent with the clarifying instruction the Trial Court gave to the jury at New Morgan's request. *See* R.R. at 3692a-93a.

with the expiration of the contract on February 13, 2019. Rather, the host fee obligation applied as long as Conestoga Landfill accepts out-of-county waste. Thus, New Morgan is required to continue paying host fees to the County for each ton of out-of-county waste accepted at Conestoga Landfill.[27]

In sum, we conclude that New Morgan was not required to file a second post-trial motion after the Trial Court's entry of the declaratory judgment, because the January 9, 2020 proceeding did not constitute a trial for purposes of Pa.R.Civ.P. 227.1. We also conclude that New Morgan failed to preserve its claimed errors with regard to Question 5 on the verdict slip and the jury's allegedly inconsistent verdict for appellate review. Finally, we conclude that New Morgan's evidentiary challenges were not a proper basis for the specific post-trial relief it requested.

Accordingly, we deny Defendants' Application to Quash and affirm the Trial Court's January 9, 2020 Order.

_____
ELLEN CEISLER, Judge

---

[27] Despite its claim that the obligation to pay host fees terminated with the expiration of the contract, the record shows that New Morgan continued to pay host fees to the County through trial, although it did so "under protest." *See* R.R. at 1790a, 1808a, 2334a-37a.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Morgan Landfill Company, Inc., :
                Appellant    :
                             :
        v.              :  No. 149 C.D. 2020
                             :
Berks County Solid Waste Authority  :
and County of Berks, Pennsylvania  :

# **O R D E R**

AND NOW, this 15th day of October, 2021, we hereby DENY the Application to Quash filed by Berks County Solid Waste Authority and County of Berks, Pennsylvania, and AFFIRM the January 9, 2020 Order entered by the Court of Common Pleas of Berks County.

                               _____
                               ELLEN CEISLER, Judge